## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN ORIE MELVIN,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| v. | : | **NO.** |
| | : | |
| **STEPHEN D. ZAPPALA,** | : | **SECTION 2254 PETITION** |
| **DISTRICT ATTORNEY OF** | : | |
| **ALLEGHENY COUNTY, and** | : | |
| **FRANK J. SCHERER,** | : | |
| **DIRECTOR, ALLEGHENY** | : | |
| **COUNTY PROBATION,** | : | |
| | : | |
| **Respondents.** | : | **ELECTRONICALLY FILED** |

---

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

---

Petitioner Joan Orie Melvin ("Orie Melvin"), by and through her undersigned counsel, states the following as her Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254:

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.      This Petition for Writ of Habeas Corpus arises from the unprecedented criminal prosecution of a sitting Pennsylvania Supreme Court

Justice for allegedly misusing judicial resources.

2.       Following a two-and-a-half year investigation by the District
Attorney of Allegheny County that began with an unconstitutional seizure of Orie
Melvin's entire personal email account, the District Attorney of Allegheny County
filed a nine-count Criminal Complaint against Orie Melvin on May 18, 2012
alleging that she misused her judicial staff and the legislative staff of her sister,
former Pennsylvania State Senator Jane Orie, to advance her 2003 and 2009
campaigns for the Pennsylvania Supreme Court.  (R. 20a.)[1]

3.       Given Orie Melvin's previous tenure as a judge on the
Allegheny County bench from 1990 to 1997 and the fact that Lisa Sasinoski, the
wife of sitting Allegheny County Judge Kevin A. Sasinoski, was identified as a
key prosecution witness, Orie Melvin moved on June 1, 2012 for appointment of
an out-of-county judge to preside over her case.  (R. 30a.)  The motion was
deferred by Order dated June 4, 2012 pending the outcome of the preliminary
hearing.  (R. 42a.)  Orie Melvin filed a motion for reconsideration on June 12,
2012.  (R. 43a.)  The trial court denied the request for appointment of out-of-

[1] All references to "R__a" are to the Reproduced Record filed in connection with
Orie Melvin's appeal to the Pennsylvania Superior Court.  The Reproduced Record
is being submitted separately to this Court on a disk.

county judge pursuant to a Memorandum Opinion and Order issued on June 27,

2012.  (R. 71-77a.)  Orie Melvin then sought review of this ruling by the

Pennsylvania Supreme Court by means of an Application for Extraordinary Relief

Pursuant to King's Bench Powers and/or Plenary Jurisdiction on July 2, 2012.  (R.

78-121a.)  That application was denied on July 17, 2012.  (R. 122a.)

4.      The case proceeded to a preliminary hearing before Magisterial

District Justice James Hanley on July 30-31, 2012.  (R. 138a-911a.)  All but two of

the charges against Orie Melvin were bound over for trial at the conclusion of the

preliminary hearing.  (R.872-73a.)

5.      Shortly thereafter, the case against Orie Melvin was joined

with two sets of charges that had been pending against her sister and former

judicial secretary, Janine Orie.  (R. 1025a-41a.)  The District Attorney's pursuit of

the Orie family was well known by the time the charges against Orie Melvin were

filed in May 2012.

6.      More than two years earlier, on April 7, 2010, Orie Melvin's

sisters, former State Senator Jane Orie and her judicial secretary, Janine Orie, were

arrested and charged with theft of services and criminal conspiracy in connection

3

with alleged use of the Jane Orie's Senate staff to purportedly advance Orie

Melvin's 2009 campaign for the Pennsylvania Supreme Court.  The trial on the

charges against Jane Orie and Janine Orie began on February 7, 2011 and ended in

a mistrial on March 3, 2011.  Following the mistrial, the District Attorney filed an

additional 16 counts against Jane Orie (for a total of 34 criminal counts) and an

additional 4 counts against Janine Orie (for a total of 6 criminal counts).  The

judge who presided over the first trial of Jane Orie and Janine Orie, the Honorable

Jeffrey A. Manning, severed the case against Jane Orie from the case against

Janine Orie.  Following a second trial which began on February 29, 2012, Jane

Orie was convicted on 14 of the 34 counts against her.  Jane Orie was found not

guilty of all charges related to alleged use of government resources to support Orie

Melvin's campaigns.

7.      Having already secured a conviction against Jane Orie, and

facing a trial of Janine Orie alone, the District Attorney brought criminal charges

against Orie Melvin, then a sitting Supreme Court Justice, based on alleged misuse

of judicial resources.

8.      On August 14, 2012, the District Attorney filed a seven-count

Information charging Justice Orie Melvin with three counts of theft of services in

violation of 18 Pa. C.S.A. § 3926(b) (Counts 1-3), conspiracy to commit theft of

services in violation of 18 Pa. C.S.A. § 903 (Count 4), misapplication of entrusted

property in violation of 18 Pa. C.S.A. § 4113 (Count 5), official oppression in

violation of 18 Pa. C.S.A. § 5301 (Count 6) and conspiracy to tamper with

evidence in violation of 18 Pa. C.S.A. § 903 (Count 7).  (R. 1020-24a.)  The case

was docketed at No. 201209885 in the Court of Common Pleas of Allegheny

County.

> 9.     Orie Melvin entered a plea of not guilty on August 13, 2012.

> 10.     Interestingly, prior to filing charges against Orie Melvin, the

District Attorney admitted that he lacked authority to prosecute judges for

allegedly using court resources for campaign purposes.  In 2005, the District

Attorney declined to file criminal charges against Magisterial District Justice Mary

Grace Boyle arising from alleged use of her judicial office for campaign purposes

due to "ambiguity" in the law and instead the District Attorney referred the matter

to the Judicial Conduct Board.  See Mike Bucsko, District Judge Investigated,

PITTSBURGH POST-GAZETTE (Apr. 27, 2005, 12:00 a.m.), http://old.post-

gazette.com/pg/05117/494907-55.stm.  Similarly, in 2012, the District Attorney

declined to investigate a complaint that Magisterial District Justice Kim Hoots

5

used her office and staff to aid her re-election campaign, explaining that

prosecution was declined because Hoots "was a sitting judge." <u>See</u> James

O'Toole, <u>Complaints Against Judge Go To Conduct Board</u>, PITTSBURGH POST-

GAZETTE (May 13, 2011, 12:00 a.m.), <u>http://www.post-</u>

<u>gazette.com/stories/local/neighborhoods-east/complaints-against-judge-go-to-</u>

<u>conduct-board-297548/</u>.

      11.    While the District Attorney acknowledged the exclusive

jurisdiction of the Judiciary over matter affecting court resources and court

personnel in declining prosecution of Magisterial District Justice Boyle or

Magisterial District Justice Hoots, he nonetheless elected to pursue criminal

charges against Orie Melvin based on purported misuse of court resources.  The

prosecution of Orie Melvin is premised on alleged violations of the Guidelines

Regarding Political Activity by Court-Appointed Employees adopted by the

Pennsylvania Supreme Court on November 24, 1998 (referred to hereinafter as

"the Guidelines").  (The Guidelines are printed at R. 1498a-1501a.  A copy of the

Guidelines is also attached hereto as Exhibit "A.")  The Guidelines state that

"Court-appointed employees shall not be involved in any form of partisan political

activity."  (<u>See</u> Guidelines ¶ 2(a).)  "Partisan political activity" is defined in the

6

Guidelines to include, but not be limited to:

> [R]unning for public office, serving as a party
> committee-person, working at a polling place on Election
> Day, performing volunteer work in a political campaign,
> soliciting contributions for political campaigns, and
> soliciting contributions for a political action committee
> or organization, but shall not include involvement in
> non-partisan or public community organizations or
> professional groups.

(Id. ¶ 1(a).)  The Guidelines, of course, are not criminal statutes.  Rather,

responsibility for implementing the Guidelines is delegated to the President Judge

of each appellate court or county court of common pleas.  (Id. ¶ 4.)  The

Guidelines do not reference criminal prosecution but rather merely warn that any

employee who fails to "cease such partisan political activity at once" will be

"terminated from his or her position."  (Id. ¶ 3.)  In basing the charges against Orie

Melvin on the Guidelines, the District Attorney theorized that, since political

activity is prohibited by the Guidelines, any political activity by Orie Melvin's

judicial staff constituted misuse of judicial resources for purposes of the charged

offenses.

       12.    On August 23, 2012, the case against Orie Melvin was joined

with the two cases that had been pending against her sister and former judicial

secretary, Janine Orie, since April 17, 2010 and December 16, 2011, respectively. (R. 1025a.)  The charges against Orie Melvin and her sister were dissimilar and, at times, conflicting, and therefore joinder was inappropriate.  Among other things, Janine Orie was charged with conspiring with Jane Orie's chief of staff, Jamie Pavlot, to divert the resources of Jane Orie's legislative staff, (R. 922a, R. 935a), but Orie Melvin was not charged with conspiring with Jamie Pavlot, (R. 1022-24a).  In addition to the different charged conspiracies, there were other material differences between the charges and Janine Orie faced additional charges for tampering and solicitation to commit tampering.  (R. 949a.)  Nonetheless, the Honorable Jeffrey A. Manning granted the District Attorney's motion for joinder over Orie Melvin's objection on August 23, 2012 and required Orie Melvin to be tried together with her sister whose services she was alleged to have diverted to benefit her political campaigns.  (R. 1025-41a.)

13.    At status conferences on September 14, 2012 and October 26, 2012, counsel for Orie Melvin requested access to original electronic evidence that was searched by the District Attorney, including two terabytes of original electronic evidence seized by the District Attorney from the office of former State Senator Jane Orie pursuant to a search warrant on December 11, 2009.  (R. 1060-

63a, 1097a-1104a.)  Following argument on the issue, Judge Nauhaus agreed that

Orie Melvin was allowed to inspect the original evidence seized from Jane Orie's

office and entered an Order dated October 29, 2012 granting access to Orie

Melvin.  (R. 1116a.)  On the same date, Judge Nauhaus granted Orie Melvin's

request to examine original computer equipment in the possession of the Superior

Court which was searched pursuant to a subpoena issued by the District Attorney.

(R. 1117a.)

14.    Judge Nauhaus later withdrew both of the October 29, 2012

Orders.  With respect to the Superior Court computers, Judge Nauhaus determined

on November 19, 2012 that he did not have authority to allow the inspection.  (R.

1276-83a, R. 1332a.)  On the issue of the Legislative Branch equipment, Judge

Nauhaus relied on the Assistant District Attorney's misrepresentation that the

equipment was under grand jury seal (R. 1307a) — in fact, the evidence was not

under seal[2] — and, on this basis, vacated the October 29, 2012 Order granting Orie

---

[2] Judge Zottola confirmed at the December 21, 2012 status conference that any
grand jury seal was lifted when the presentment against Jane Orie was made
public:

> And once the presentment was made public and the trial
> took place, that information's not going to be sealed.

(R. 1744a.)

Melvin the opportunity to inspect the original electronic evidence.  (R. 1312a.)

Judge Nauhaus further ruled that any request to access the equipment should

instead be presented to the Honorable John A. Zottola who had been assigned to

handle grand jury matters.  (R. 1312a.)  Orie Melvin submitted the request to

Judge Zottola at the December 21, 2012 status conference.  (R. 1751a.)  At that

conference, Judge Zottola ruled that Orie Melvin would be permitted to inspect the

original electronic evidence as long as the Commonwealth had the same

opportunity.  (R. 1751-53a.)  On December 31, 2012, Orie Melvin submitted to

Judge Zottola a proposed order authorizing her expert to examine the original

evidence seized from Jane Orie's legislative office.  (R. 1698a-1700a.)  Following

additional argument on January 11, 2013, however, Judge Zottola reversed his

prior ruling and refused to allow Orie Melvin to examine the original evidence.[3]

---

[3] The Superior Court made an unreasonable determination of the facts in
concluding that Judge Nauhaus vacated the prior Order and referred the matter to
Judge Zottola "after receipt of a motion for reconsideration filed by the Senate
Republican Caucus."  Commonwealth v. Melvin, 103 A.3d 1, 32 (Pa. Super.
2014).  The Senate Republican Caucus did not move for reconsideration.  Rather,
counsel for the Caucus wrote to Judge Nauhaus on November 14, 2012 to report
that the Caucus was unable to make the original equipment available because it
was in the possession of the District Attorney's Office and requested that the
seized property be returned to the Caucus so that the Caucus could comply with
the October 29, 2012 Order while protecting and preserving the Legislative
privilege.  (R. 1188a, 1303-04a.)  It is further noteworthy that the Caucus tried
unsuccessfully for some time to have its original equipment returned.  The
Commonwealth opposed the request.  This issue was the subject of a separate

(R. 2136a.)

15.    Orie Melvin filed an Omnibus Pretrial Motion pursuant to Rule 578 of the Pennsylvania Rules of Criminal Procedure and supporting brief on December 7, 2012. (R. 1353a-1589a.) In her motion, Orie Melvin raised a number of substantive issues, including a constitutional challenge to the effort of the Executive Branch to police the use of Judicial Branch resources, the constitutionality of criminal charges based on a non-criminal work rule, the timeliness of the charges, the unconstitutional seizure of a personal email account and the Commonwealth's failure to make out a prima facie case at the preliminary hearing. Judge Nauhaus denied the motion in its entirety at the status conferences on December 21, 2012 and January 4, 2013. (R. 1726-34a, 1755-57a.) The trial court did not schedule or hold a suppression hearing or entertain substantive oral argument on Orie Melvin's motion to suppress the contents of her email account. Nor did Judge Nauhaus reach or decide the merits of Orie Melvin's challenge to the seizure. Instead, Judge Nauhaus ruled that the issue had already been decided by "a court of concurrent jurisdiction," presumably referring to a similar motion

---

appeal docketed at No. 1626 WDA 2013 in the Pennsylvania Superior Court.

11

filed by Jane Order in her separate case.  (R. 1732a.)[4]  Orie Melvin was thus

denied a full and fair opportunity to litigate this critical issue.

16.     On January 7, 2013, Orie Melvin sought review of the trial

court's refusal to dismiss the charges on separation of powers grounds by filing an

Application for Extraordinary Relief Pursuant to King's Bench Power and/or

Plenary Jurisdiction in the Pennsylvania Supreme Court.  (R. 1755a.)  The

application was denied by Order dated January 10, 2013.  (R. 2104a.)

17.     The case was tried before a jury beginning on January 24,

2013.  Through his words and actions, the trial court regularly and repeatedly

communicated to the jury his belief that the charges against Orie Melvin had

substantial merit and that her defense was not worthy of credence.  Among other

things, the trial court:  expressed personal disbelief that court employees have no

set or minimum number of work hours and then proceeded to question the Human

Resource Director for the Administrative Office of Pennsylvania Courts after he

admitted on cross-examination by defense counsel that judicial staffers were not

required to devote any minimum number of hours in order to receive their full

---

[4]   Orie Melvin was not charged for more than a year after Jane Orie's suppression
hearing.  Orie Melvin had neither a right nor an opportunity to participate in Jane
Orie's suppression hearing.

salary (R. 4744a, 4754-55a, 4758a); offered his personal opinion that time spent

by employees performing political tasks was not <u>de minimis</u> and that co-defense

counsel's strategy of totaling minutes allegedly spent on political tasks was not

credible (R. 4093-94a); offered his personal opinion that defense strategies were

not persuasive or coherent (R. 3454-55a, 4488a, 4491a); improperly limited

relevant cross-examination of a key Commonwealth witness (R. 3488-89a);

offered an excuse for his colleague's wife, a Commonwealth witness, who had

committed perjury (R. 4262a, 4301-02a, 5530-34a); made inconsistent rulings

concerning the admission of hearsay that overtly favored the prosecution (R.

3915a, 4700a, 5127a); and shut down questioning of Commonwealth witnesses

concerning whether they had finished all their work (R. 5096a, 4240-41a, 4611-

12a, 4616a).

18.    Orie Melvin did not testify at trial.  Nor did she testify at any

pre-trial or post-trial hearing.

19.    At the close of the Commonwealth's case, Orie Melvin renewed

the legal challenges advanced in her Omnibus Pretrial Motion and challenged the

sufficiency of the evidence introduced by the Commonwealth.  (R. 5102-10a.)

Her motion was denied.  She renewed her challenges after the defense rested.  (R.

5693-97a.)

20.     The trial court scheduled a charging conference on February 14, 2013 to address the jury charge and the proposed additions to the Court's standard charges. (R. 5703-29a.)  The Commonwealth did not request a charge on accomplice liability before the charging conference.  The trial court did not include an accomplice charge in the proposed charged which was given to counsel.  Nor did any party or the Court raise the issue of an accomplice charge during the charging conference. (R. 5703-29a.)  Accordingly, counsel for Orie Melvin prepared for closing argument on February 15, 2013 with the understanding that no accomplice liability charge would be given.

21.     The jury began its deliberations on February 15, 2013.  After the jury retired to begin deliberations, the jury submitted a question concerning "the definitions" of the various charges. (R. 5843-46a.)  The Commonwealth then requested for the first time that the jury be given an instruction on accomplice liability (R. 5842a).  Counsel for Orie Melvin objected, (R. 5846a), and Judge Nauhaus initially denied the request, (R. 5847a), but, after the President's Day weekend, Judge Nauhaus reconsidered his ruling and agreed to give the new instruction over the objection of the defense, (R. 5863-66a).  Before the jury

14

resumed deliberations on Tuesday, February 19, 2013, the trial court gave an entirely new instruction on accomplice liability. (R. 5858-70a.)

22.   On February 21, 2013, the jury returned a verdict of guilty on Counts 1 through 4 (theft of services), Count 5 (misapplication of government property) and Count 7 (conspiracy to commit tampering). The jury was unable to reach a unanimous verdict on the official oppression charge in Count 6.

23.   Orie Melvin was sentenced by Judge Nauhaus on May 7, 2013 to a three-year term of home confinement followed by a two-year term of probation. In addition, she was Ordered to pay a fine, costs and restitution totaling $127,979.97. (R. 7779-81a, 7811-14a.) This amount consisted of $55,000 in fines, $33,475.71 in restitution, $2,334.08 in court costs and the remainder relates to the costs of electronic monitoring. (R. 7813-14a.) The trial court also orally imposed as a condition of her sentence that Orie Melvin serve in a soup kitchen three days a week and that she be required to write letters of apology to her former staff and all of the judges in the Commonwealth of Pennsylvania. (R. 7780-83a.) Judge Nauhaus directed that the apology was to be printed on the back of a picture of Orie Melvin wearing handcuffs. (R. 7783a.)

15

24.     Before adjourning on May 7, 2013, Judge Nauhaus summoned the county photographer to the courtroom and directed Orie Melvin to a room at the rear of the bench where she was handcuffed and directed to pose for photographs.  The exchange was as follows:

| | |
|---|---|
| THE COURT: | Is the County photographer here? |
| MR. CLAUS: | I'm sorry, Your Honor? |
| THE COURT: | The County photographer?  Okay. I'm going to have a picture of you taken, and I'm going to have copies of that picture made in the amount of the Judges of the Commonwealth of Pennsylvania.  And you are going to apologize on each one of these pictures, and they are going to be sent to each Judge in Pennsylvania.  That will be part of the cost of prosecution. |
| | . . . |
| THE COURT: | Where is the photographer? |
| COUNTY PHOTOGRAPHER: | I'm here. |
| THE COURT: | All right.  The photographer, one of the deputy sheriffs, and Joan Orie Melvin and her attorney will retire into that room.  Anything else?  This matter is complete. |
| MR. CLAUS: | Nothing, Your Honor. |
| THE COURT: | Court is adjourned.  Jane, come on in. |

*(The following in-chambers discussion was held on the record.)*

16

THE COURT:      This is the picture.  Put handcuffs on her.

*(Whereupon, the deputy sheriff places handcuffs on Defendant Orie Melvin.)*

THE COURT:      This is the picture I want.  This is the picture that
goes to the rest of the Judiciary.  Law Claus will
tell you how many copies he needs.  Take this
picture.

*(Whereupon the County Photographer takes a picture.)*

THE COURT:      Okay.  Take them off.

(See Tr. of Sentencing Hearing on May 7, 2013 at 64:24-65:8, 66:2-67:2.)  (R.

7781a-7784a.)

25.     The photograph taken by the county photographer pursuant to

Judge Nauhaus's Order was immediately leaked to the press and appeared in news

reports later that same day.  See Adam Brandolph, Former Justice Melvin

Sentenced to 3 Years of House Arrest, 2 Years of Probation, TRIBLIVE (May 7,

2013, 11:34 a.m.), http://triblive.com/news/adminpage/3946628-74/melvin-court-

orie#axzz3m0iszHWt; Paula Reed, Orie Melvin, Sister Guilty of Corruption, Put

on House Arrest, PITTSBURGH POST-GAZETTE (May 7, 2013, 11:45 p.m.),

http://www.post-gazette.com/news/state/2013/05/07/Orie-Melvin-sister-guilty-of-

corruption-put-on-house-arrest/stories/201305070235.

26.     A re-sentencing hearing was scheduled for May 14, 2013 due

17

to the trial court's concern that a three-year sentence of intermediate punishment (i.e., home confinement) may be unlawful. (R. 7787a.) On May 14, 2013, Judge Nauhaus resentenced Orie Melvin to three, one-year sentences of home confinement on counts 1, 3 and 4, with the sentences to run consecutively. (R. 7789-90a.) She was re-sentenced to consecutive one-year terms of probation following home confinement on the remaining counts. (R. 7790a.) Orie Melvin challenged the constitutionality of the apology requirement at the re-sentencing hearing. Judge Nauhaus declined to rescind or stay the requirement but agreed to take the issue under advisement on May 14, 2013. (R. 7795-99a.)

27.    Orie Melvin filed a timely notice of appeal to the Pennsylvania Superior Court on May 20, 2013. (R. 7815a.) The appeal was docketed at No. 844 WDA 2013. Judge Nauhaus issued an Opinion pursuant to Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure on September 12, 2013. (A copy of the Opinion is attached hereto as Exhibit "B.")

28.    While Orie Melvin's direct appeal from the criminal conviction was pending, Judge Nauhaus scheduled a probation violation hearing for October 15, 2013 because Orie Melvin had not written the letters of apology. (R. 7867a.) Orie Melvin applied to the Pennsylvania Superior Court for a stay of the apology

requirement.  The motion for stay was granted on November 6, 2013.

Commonwealth v. Melvin, 79 A.3d 1195 (Pa. Super. 2013).  Despite the stay, and

the fact that a criminal sentence cannot be "adjusted" or corrected more than 30

days after the sentence is imposed, Judge Nauhaus issued an Order on November

7, 2013 scheduling a hearing on "adjustments" to Orie Melvin's sentence for

November 14, 2013.  At the hearing on November 14-15, 2013, Judge Nauhaus

stayed the remainder of Orie Melvin's sentence over her objection.  (R. 7903a-

7939a.)  Orie Melvin filed a timely notice of appeal from the November 15, 2013

Order on December 13, 2013.  The second appeal was docketed at No. 1974 WDA

2013 in the Pennsylvania Superior Court.

29.    Both appeals were consolidated by Order of the Superior Court

dated May 1, 2014.

30.    In her appellate briefs filed in the Superior Court, Orie Melvin

asserted 15 separate grounds for her appeal, including:  the charges infringe upon

the Judiciary's exclusive power to supervise the courts; the charges violate due

process to the extent they are based on an internal work rule; the search warrant

authorizing the seizure of personal email account was overbroad and therefore

unconstitutional; it was error to not appoint an out-of-county judge; the extension

of the statute of limitations for "public officers" does not apply to "judicial officers"; the charges should have been dismissed as a sanction for the prosecutor's knowing introduction of false evidence and subornation of perjury; the case should not have been joined with the case against her sister, Janine Orie; Orie Melvin should have been allowed to examine original electronic evidence seized by the prosecution from the office of former State Senator Jane Orie and other electronic evidence in the possession of the Superior Court which was searched at the request of the prosecutor and the prosecutor should have reviewed the seized evidence for Brady material; the Commonwealth failed to make out a prima facie case at the preliminary hearing; the trial court erred in excluding evidence relating to Orie Melvin's judicial productivity; the trial court deprived Orie Melvin of a fair trial by offering personal opinions and commenting on the evidence; the evidence was insufficient to support a conviction on any of the charges; the trial court erred in instructing the jury on accomplice liability after the jury started deliberations; and the trial court erred in requiring Orie Melvin to write letters of apology as part of her sentence.

31.   On August 21, 2014, the Superior Court issued an Opinion affirming Orie Melvin's conviction and sentence, with one exception and one

modification.  Specifically, the Superior Court struck the condition that Orie

Melvin write letters of apology to every judge in Pennsylvania on the back of a

photograph of herself in handcuffs.  The Superior Court held that this condition

was an "unorthodox gimmick" which was "imposed solely for the purpose of

humiliating and shaming her."  Melvin, 103 A.3d at 55.  With respect to the

apology letters, the Superior Court determined that Orie Melvin could not be

compelled to write the letters until her direct appeal rights had been exhausted.  Id.

at 51.

32.     Orie Melvin filed a Petition for Allowance of Appeal in the

Pennsylvania Supreme Court on September 25, 2014 and withdrew the Petition on

October 27, 2014 before the Commonwealth filed its response and prior to any

substantive action by the Court on the Petition.  The Petition was docketed at No.

440 WAL 2014.  Orie Melvin did not seek review in any other court.  Nor did she

file a petition for certiorari in the United States Supreme Court.

33.     Orie Melvin was required to appear for a re-sentencing hearing

on November 4, 2014.  At the hearing, Judge Nauhaus re-affirmed the total three-

year term of home confinement and again required Orie Melvin to "write a

personal letter of apology . . . to all sitting judges and justices in the state ONLY

21

after approved by Judge Nauhaus." (See Modification Order of Sentence dated

November 4, 2014.)  She was also required to write letters of apology to all of her

staff and to Jane Orie's staff.  Whereas, the original sentence authorized Orie

Melvin, a devout Catholic, to attend daily Mass, (R. 7819a), Judge Nauhaus

retracted this permission on November 4, 2014, but did allow Orie Melvin to

"attend church services on Sunday, Christmas Eve and Holy Days of Obligation."

(See Modification Order of Sentence dated November 4, 2014.)

34.    Other than the direct appeals identified above, Orie Melvin has

not previously filed any other petitions, applications or motions concerning this

judgment of conviction in any state court.

35.    Orie Melvin asserts five separate grounds as the basis for relief

under 28 U.S.C. § 2254.

## GROUND ONE: THE CHARGES AGAINST ORIE MELVIN VIOLATE DUE PROCESS BECAUSE THEY ARE PREMISED ON ALLEGED VIOLATION OF AN INTERNAL COURT RULE

36.    The entire prosecution of Orie Melvin was impermissibly based

on alleged violation of the Guidelines, the non-criminal, administrative court rules

regulating political activity by judicial employees.  The Guidelines are expressly

22

referenced in the charging document, (R. 1023a), were invoked by the Assistant

District Attorney in questioning each judicial employee called as a witness, (R.

4215-17a, 4430-33a, 4540-43a, 4587-88a, 4651-53a), and formed the centerpiece

for the Assistant District Attorney's closing argument, (R. 5780-81a, 5794a).  In

fact, the Assistant District Attorney argued to the jury that the Guidelines provided

the "scienter" necessary for a conviction on each of the charged offenses.  (R.

5780-81.)

37.     The charged offenses, of course, do not make reference to the

Guidelines or political activity and do not in any way give notice that violation of

a work rule may be punished as a crime.  Nor do the Guidelines in any way

suggest that a violation of the Guidelines will or may result in criminal

prosecution.  To the contrary, as noted above, the Guidelines make the President

Judge of each court responsible for enforcement and dictate that, at worst, repeated

violations may result in loss of employment.  (See Guidelines ¶ 4.)

38.     Delegating to judges the exclusive authority to supervise

conduct of court employees comports with the Pennsylvania Constitution which

confers upon the Judiciary the exclusive authority to regulate the conduct of court

employees and the use of court resources.  Pa. Const. Art. V, §§ 10(a), (c); see also

<u>Jefferson County Court Appointed Employees Ass'n v. Pennsylvania Labor</u>

<u>Relations Bd.</u>, 603 Pa. 482, 498, 985 A.2d 697, 707 (2009) ("The judicial branch's

right to hire, fire, and supervise its employees is derived from this constitutional

source.").

       39.    Basing criminal charges on an alleged violation of the

Guidelines is a plain violation of due process.  It is "fundamental to our concept of

constitutional liberty" that "persons have a right to fair warning of that conduct

which will give rise to criminal penalties."  <u>Marks v. United States</u>, 430 U.S. 188,

191, 97 S. Ct. 990, 992-93, 51 L. Ed 2d 260 (1977) (citations omitted).  It

necessarily follows that a criminal charge which is premised on standards that do

not appear in the language of the statute violate due process.  <u>See</u>, <u>e.g.</u>, <u>Rabe v.</u>

<u>Washington</u>, 405 U.S. 313, 316, 92 S. Ct. 993, 994, 31 L. Ed. 2d 258 (1972)

(statute impermissibly vague where it fails to give fair notice that location is "vital

element of the offense"); <u>United States v. Standard Brewery</u>, 251 U.S. 210, 219,

40 S. Ct. 130, 141, 64 L. Ed. 2d 229 (1920) ("Administrative rulings cannot add to

the terms of an act of Congress and make conduct criminal which such laws leave

untouched."); <u>United States v. George</u>, 228 U.S. 14, 22, 33 S. Ct. 412, 415, 57 L.

Ed. 2d 712 (1913) ("Where the charge is of crime, it must have clear legislative

basis.")

40.   Orie Melvin raised this issue in her appeal to the Pennsylvania

Superior Court and therefore exhausted available state law remedies in accordance

with Order No. 218 issued by the Pennsylvania Supreme Court.

41.   The Superior Court recognized, as it must, that "[n]one of the

crimes for which [Orie Melvin] was prosecuted or convicted specifically

proscribes political activity," Melvin, 103 A.3d at 16, but nonetheless ruled that

the charges were not violative of the constitutional due process guarantee because

"Orie Melvin was not convicted for violating the Supreme Court's rule against

political activity," id.  This terse, one-sentence explanation buried in a footnote is

based on an unreasonable and inaccurate determination of the facts since it ignores

the District Attorney's prosecution theory, the charges (R. 1023a), the evidence

admitted against Orie Melvin (R. 4215-17a, 4430-33a, 4540-43a, 4587-88a, 4651-

53a), and the prosecutor's closing argument, (R. 5784-85a, 5794a.)  Moreover, the

Superior Court failed to consider or properly apply controlling Supreme Court

precedent which holds that a criminal statute "must be sufficiently explicit to

inform those who are subject to it what conduct on their part will render them

liable to its penalties."  Connally v. General Constr. Co., 46 S. Ct. 126, 127, 269

U.S. 385, 391, 70 L. Ed. 2d 322 (1926) (citation omitted.)

42.     The Superior Court decision is contrary to clearly established federal law and is based on an unreasonable interpretation of the facts and consequently Orie Melvin is entitled to relief under § 2254.

**GROUND TWO: THE PROSECUTOR FAILED TO SEARCH FOR EXCULPATORY EVIDENCE IN VIOLATION OF BRADY AND ORIE MELVIN WAS DENIED ACCESS TO EVIDENCE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS**

43.     Less than one month after Orie Melvin was elected to a seat on the Pennsylvania Supreme Court, the District Attorney seized 12 computer hard drives, a server and numerous portable storage devices from the offices of former State Senator Jane Orie pursuant to a search warrant executed on December 11, 2009. The Senate Republican Caucus and then Senator Orie immediately asserted legislative privilege over the seized materials. In an effort to address the privilege implications, the supervising judge of the grand jury appointed a Special Master to review the seized material "for the purposes of privilege, relevance and any other evidentiary purpose." See Order of Court dated December 29, 2009. (The Order is printed at R. 7940a. A copy of the Order is also attached hereto as Exhibit "C.")

44.    Orie Melvin requested of the trial court that she be permitted to examine the original electronic evidence seized by the District Attorney in order to prepare for trial and identify evidence for use in her defense.  The trial court initially recognized Orie Melvin's right of inspection and, on October 29, 2012, entered an Order granting Orie Melvin's expert access to the original computer hard drives and electronic files seized by the District Attorney.  (R. 1116a.)

45.    Shortly thereafter, however, Judge Nauhaus withdrew the Order and referred the matter to the judge presiding over grand jury matters, the Honorable John A. Zottola, based on the Assistant District Attorney's incorrect representation that the hard drives and electronic evidence were under grand jury seal.  In fact, there was no seal.  (R. 1744a.)  After hearing arguments, Judge Zottola initially indicated that Orie Melvin would be permitted to examine the seized electronic evidence.  (R. 1751-53a.)  Three weeks later, however, on January 11, 2013, Judge Zottola reversed his position and refused to allow Orie Melvin to access the original evidence which was then in possession of the District Attorney.   (R. 2136a.)

46.    Neither the District Attorney, nor the Special Master, nor any other government agent or official looked for potentially exculpatory information

in the original hard drives, server and other electronic evidence which the District

Attorney seized and which remained in the District Attorney's possession.  (R.

8311a, 8313a, 8315a.)  This is a plain <u>Brady</u> violation.  The prosecutor has a non-

delegable "duty to learn" of <u>Brady</u> information that is in the possession of the

prosecution team.  <u>See</u>, <u>e.g.</u>, <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555,

1567, 131 L. Ed. 2d 490 (1995).

47.     Further, Orie Melvin was denied the opportunity to examine

the seized electronic evidence in violation of her rights under the Fifth and Sixth

Amendments.  <u>See</u>, <u>e.g.</u>, <u>Davis v. Alaska</u>, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110,

39 L. Ed. 2d 347 (1974).

48.     Orie Melvin raised this issue in her appeal to the Pennsylvania

Superior Court and therefore exhausted available state law remedies in accordance

with Order No. 218 issued by the Pennsylvania Supreme Court.

49.     The Superior Court did not consider or apply controlling

federal authority but instead ruled that there was no <u>Brady</u> violation since the

seized electronic evidence was "within the exclusive control of Judge Zottola and

the Special Master."  <u>Melvin</u>, 103 A.3d at 33.  This ruling was based on

Pennsylvania state court decisions interpreting the Pennsylvania discovery rules, not federal law interpreting a prosecutor's obligations under <u>Brady</u>. The Superior Court failed to apply clearly established federal law which holds that a prosecutor's <u>Brady</u> obligation extends to exculpatory evidence in the possession of other agencies of the same government bringing the prosecution. <u>See</u>, <u>e.g.</u>, <u>Kyles</u>, 514 U.S. at 437, 115 S. Ct. At 1567 ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case. . ."). Since the seized evidence remained in the custody of the District Attorney at all relevant times, (R. 1284a, 8311a, 8313a, 8315a), the Superior Court erred in failing to apply <u>Kyles</u>.

50.    The Superior Court also erred in concluding that the seized electronic evidence was available to Orie Melvin through other sources. <u>Melvin</u>, 103 A.3d at 34. This is not a reasonable determination of the facts. In fact, the seized material was at all times subject to a claim of privilege asserted by the Senate Republican Caucus and was therefore not available to Orie Melvin. The transcript which the Superior Court cites as the basis for its finding — the transcript of the Status Conference on January 11, 2013, <u>Melvin</u>, 103 A.3d at 34 — confirms several times that the desktop computers and file servers seized from

29

Jane Orie's offices by the District Attorney remained subject to a claim of privilege asserted by the Senate Republican Caucus and for this reason were not available to Orie Melvin.  (R. 2131a (Assistant District Attorney stated: "[T]o the best of my knowledge, that privilege is still out there."); R. 2133a (privilege asserted with respect to contents of desktop computers and file server); R. 2136a (Judge Zottola ruled: "I'm going to stick to my original determination when I was supervising the matter to make sure that those privileges were protected.").  The Superior Court's ruling to the contrary is unreasonable and factually incorrect.  Moreover, the decision is contrary to settled federal law which holds that the duty to identify and produce exculpatory information belongs to the prosecution and the prosecutor cannot avoid this obligation by suggesting that the accused should look for the exculpatory information elsewhere.  Banks v. Dretke, 540 U.S. 668, 696, 124 S. Ct. 1256, 1275, 157 L. Ed. 2d 1166 (2004) ("A rule . . . declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process.").

     51.    In addition, Orie Melvin was not allowed to examine computer equipment which was used by her judicial staff and which was in the possession of the Pennsylvania Superior Court.  The Commonwealth caused the equipment to be

searched pursuant to a grand jury subpoena. Orie Melvin's request to have her own expert examine and conduct searches on the computer equipment was initially granted by Order dated October 29, 2012, (R. 1117a), but this Order was revoked on November 19, 2012, (R. 1276-83a, 1332a). This was also a violation of Orie Melvin's rights under the Fifth and Sixth Amendments.

52.     The Superior Court misapplied clearly established federal law in concluding that the District Attorney had no obligation under <u>Brady</u> to search for exculpatory information in the seized evidence and in failing to recognize Orie Melvin's constitutional right to examine that evidence and, as a result, her conviction should be vacated under § 2254.

**GROUND THREE:  ORIE MELVIN WAS DENIED ANY OPPORTUNITY TO CHALLENGE THE PROSECUTOR'S DIRECT AND INDIRECT USE OF HER PERSONAL EMAILS WHICH WERE SEIZED PURSUANT TO AN UNCONSTITUTIONAL WARRANT**

53.     Pursuant to a warrant issued on January 5, 2010, the Commonwealth caused a search warrant to be served by fax on Yahoo! at its offices in Sunnyvale, California compelling the production of the entirety of Orie Melvin's personal email accounts. Specifically, the warrant authorized the seizure of "[a]ll stored communications and other files reflecting communications to or

from user account/user names oriemelvin@yahoo.com, [and]

judgeoriemelvin4supreme@yahoo.com between August 1, 2009 and the present."

(R. 1556a.)

54.    The trial court denied Orie Melvin's request to suppress the

contents of the email accounts without a suppression hearing.  (R. 1354a, 1732-

33a.)  In fact, Judge Nauhaus later indicated in his post-trial opinion that he was

not aware that a motion to suppress had been filed.  (R. 7843a.)

55.    Orie Melvin raised the issue in her appeal to the Pennsylvania

Superior Court and therefore exhausted available state law remedies in accordance

with Order No. 218 issued by the Pennsylvania Supreme Court.

56.    The Superior Court held that "the warrant authorizing the

seizure of Orie Melvin's personal emails . . . was overbroad." Melvin, 103 A.3d at

19.  The Superior Court, however, found the error harmless because "the 10 emails

seized pursuant to the warrant for Orie Melvin's email accounts and their use at

trial by the Commonwealth . . . were not prejudicial to Orie Melvin or the

prejudice was de minimis, or because they were cumulative of other properly

admitted evidence." Id. at 21-22.  These factual determinations are unreasonable

and flatly contradicted by the record.  Orie Melvin made clear to the Superior

Court in her May 22, 2014 submission that the 10 referenced emails represent only

a "<u>partial</u> list" of the seized emails which were admitted into evidence at trial.

(Emphasis added.)  (A copy of the May 22, 2014 submission is attached as Exhibit

"D.")  Further, the Superior Court recognized in its May 28, 2014 Order that Orie

Melvin's submission was a "<u>partial</u> list."  (<u>See</u> May 28, 2014 Order at p. 1.)

(Emphasis added.)  (A copy of the May 28, 2014 Order is attached as Exhibit "E.")

It was patently unreasonable and incorrect for the Superior Court to conclude that

there were only 10 emails were seized and admitted at trial.

57.    More than 15,000 of Orie Melvin's emails were seized, (R.

5889a), and the District Attorney offered more than 10 of the seized emails into

evidence at trial.  In addition to the 10 email messages referenced in the May 22,

2014 submission, the following Commonwealth exhibits consist of emails seized

from Orie Melvin's personal account:  Ex. 14, Tabs 7, 39, 40, 42, 43; Ex. 28, Tab

15; Ex. 29, Tabs 19, 29; Ex. 34, Tab 15; Ex. 35, Tab 4; Ex. 42, Tab 3; Ex 44, Tabs

5, 7, 9.  (Copies of the emails are attached collectively as Exhibit "F.")  The

Superior Court failed to consider any of these emails or the likelihood that the

Commonwealth used the illegally seized email messages to develop its case

against Orie Melvin.

58.    It is thus abundantly clear that Orie Melvin did not have a full and fair opportunity to challenge the evidentiary use of the illegally seized evidence.  She was given neither notice nor an opportunity to address the issue of harmless error in her briefs, at oral argument, in a post-argument submission or at an evidentiary hearing.  Moreover, the Superior Court never questioned or even considered whether the "other" evidence admitted against Orie Melvin derived from the illegally seized emails and should have been excluded as fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407. 416, 9 L. Ed. 2d 441 (1963).  In denying a new trial based on "other" purportedly "cumulative" evidence without an evidentiary hearing and without considering the source of the "other" evidence, the Superior Court improperly relieved the Commonwealth of its burden of proving beyond a reasonable doubt that the "other" evidence was not tainted by the illegally seized emails.  See Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 939, 17 L. Ed. 2d 705 (1967); see also Nardone v. United States, 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 S. Ct. 307 (1939) ("once [an illegal seizure] is established, the trial judge must give opportunity . . . to the accused to prove that a substantial portion of the case

34

against him was a fruit of the poisonous tree.").  The Superior Court's decision is

thus based on an unreasonable determination of the facts and an unreasonable and

incorrect application of federal law.

59.    The unusual combination of circumstances in this case —

beginning with the trial court's failure to hold a suppression hearing based on

incorrect application and interpretation of a different judge's order in another case

in which Orie Melvin had no opportunity to participate and culminating in the

appellate court making a demonstrably inaccurate factual determination without

the benefit of an evidentiary hearing and without affording Orie Melvin a full and

fair opportunity to be heard on the issue — prevented Orie Melvin from presenting

her Fourth Amendment challenge to the admission of the illegally seized emails.

This breakdown in the fact-finding process is an exception to the limitation on

habeas relief in Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L.

Ed. 2d 1067 (1976), and requires consideration by this Court under § 2254.  See,

e.g., Boyd v. Mintz, 631 F.2d 247, 250-51 (3d Cir. 1980) (Stone does not apply

where "breakdown in the process" prevented petitioner from presenting his Fourth

Amendment claim); see also Tukes v. Dugger, 911 F.2d 508 (11th Cir. 1990)

(failure to make explicit findings on matters essential to Fourth Amendment issue

and summary affirmance preclude application of <u>Stone</u> bar), <u>cert. denied</u>, 502 U.S. 898, 112 S. Ct. 1273, 116 L. Ed. 2d 225 (1991); <u>Agee v. White</u>, 809 F.2d 1487, 1490 (11th Cir. 1987) (<u>Stone</u> does not bar federal collateral review where state appellate court failed to address petitioner's claim that evidence was derivative of illegal arrest); <u>Riley v. Gray</u>, 674 F.2d 522, 527 (6th Cir. 1981) (<u>Stone</u> poses no bar to federal review of state court decision where state appellate court "frustrated the petitioner's opportunity to litigate his fourth amendment claims because it failed to remand the case to the trial court" for evidentiary hearing), <u>cert. denied</u>, 459 U.S. 948, 103 S. Ct. 266, 74 L. Ed. 2d 207 (1982); <u>Gamble v. State of Oklahoma</u>, 583 F.2d 1161, 1165-66 (10th Cir. 1978) (federal court not precluded from considering Fourth Amendment claim where state court refused to apply correct and controlling constitutional standards).

60.     For all of these reasons, Orie Melvin's conviction should be vacated under § 2254 and the case remanded to the state court with direction to conduct an evidentiary hearing to identify all evidence derived from the illegally seized emails.

## GROUND FOUR:  ORIE MELVIN WAS DENIED A FAIR
## TRIAL AS A RESULT OF THE PROSECUTOR'S KNOWING
## INTRODUCTION OF FALSE EVIDENCE

61.    The prosecutor knowingly introduced false evidence, tampered

with evidence and suborned perjury from a key prosecution witness who was the

wife of a sitting Allegheny County judge.  Specifically, the prosecutor elicited

testimony from Orie Melvin's former law clerk, Lisa Sasinoski, that Orie Melvin

authored a hand-written note directing her to complete a political questionnaire.

The Assistant District Attorney introduced a photocopy of the hand-written note as

Commonwealth Exhibit 32, Tab 19 and elicited from Sasinoski an affirmative

response to the leading question: "That would be an endorsement questionnaire of

a special interest group."  (R. 4206a.)  The premise in both the prosecutor's

question and Sasinoski's answer was false.  The note from Orie Melvin did not

relate to a political questionnaire but rather to a roundtable discussion on women

in the legal profession.  The prosecutor was aware of this fact since the note was

attached to "Women in the Profession" materials.  Nonetheless, the prosecutor

deliberately separated the note from the attached materials and offered only the

note as a trial exhibit to mislead the jury.  (Copies of the Commonwealth's Exhibit

32, Tab 19 (the hand-written note, R. 6399a) and the actual document marked as

Defendant's Exhibit H (the note with the attached "Women in the Profession" materials) are attached collectively as Exhibit "G.")

62.     When counsel for Orie Melvin confronted Sasinoski with the actual attachment on cross-examination, the Assistant District Attorney immediately objected and claimed that he had never seen the documents that had been attached to the hand-written note.  (R. 4226-28a.)  After the jury was excused for the day, the original note was brought in the courtroom.  At that time, the "Women in the Profession" materials were attached to the hand-written note by a staple.  Rather than suggesting a mistake, the presence of the staple appending the original handwritten note to the "Women in Profession" materials proves that the Assistant District Attorney knew that the Orie Melvin note related to the professional materials rather than a political questionnaire after the note was identified and copied for use as a trial exhibit.  The only possible explanation is that the Assistant District Attorney deliberately removed the "Women in the Profession" materials and orchestrated the questioning of Sasinoski to create the false impression that Orie Melvin's handwritten note related to a political questionnaire.  The knowing introduction of false evidence and subornation of perjury intentionally subverted the judicial process and deprived Orie Melvin of a

fair trial. <u>Berger v. United States</u>, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 2d 1314 (1935) (prosecutor "is not at liberty to strike foul [blows]" but rather is duty bound to ensure "that justice shall be done").

63.     On February 4, 2013, Orie Melvin moved for a mistrial with prejudice based on the Assistant District Attorney's suborning perjury and tampering with evidence. (R. 7671a-7712a.) The trial court did not schedule a hearing on the motion and, after the hearing argument, refused to dismiss the charges with prejudice.

64.     That was not the only instance in which the Commonwealth offered false evidence. During the direct examination of another key prosecution witness, Jamie Pavlot, the Assistant District Attorney marked and moved into evidence as Commonwealth Exhibit 15, (R. 5906a), a "red accordion file" containing documents that Pavlot allegedly removed from Jane Orie's office in 2009. When Pavlot admitted on cross-examination that the accordion file contained documents created in 2010, the Assistant District Attorney conceded that the 2010 materials were not in the file that Pavlot removed from Jane Orie's office but rather were inserted later by the Commonwealth. (R. 3555-62a.) From the "red accordion file," the Assistant District Attorney highlighted an email

message dated October 22, 2009 relating to a fine that had been levied as a result of improper placement of a yard sign. (R. 3314-22a.) The Assistant District Attorney elicited testimony from Pavlot that she paid the fine and that the payment was evidenced by an express mail receipt for $15.20. (R. 3320-22a.) In fact, the receipt was dated October 21, 2009 — one day before the email was sent — and identified the recipient of the express mail package as the "Senate Republican Campaign Committee," (R. 3470a), and therefore the receipt had nothing to do with the fine. Such egregious misconduct deprived Orie Melvin of her right to a fair trial.

65. Orie Melvin raised the issue in her appeal to the Pennsylvania Superior Court and therefore exhausted available state law remedies in accordance with Order No. 218 issued by the Pennsylvania Supreme Court.

66. The Superior Court failed to address the totality of the prosecutorial misconduct in violation of controlling precedent. See Donnelly v. DeChristoforo, 416 U.S. 637, 639, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

67. Further, the Superior Court made an unreasonable determination of fact in concluding that the prejudice to Orie Melvin was minimal

and/or mitigated by instruction.  <u>Melvin</u>, 103 A.3d at 27.  This conclusion is

unreasonable for three reasons.  First, Sasinoski refused to concede on further

examination that the note did not relate to a political questionnaire.  (R. 42789-

80a, 4291-94a.)  Second, the trial court purported to lay the blame on the defense

by suggesting that the defense was at all times aware of the identity of the actual

attachment.  (R. 4279-80a.)  Third, the trial court undermined his own attempt at a

curative instruction by concluding with: "For whatever that means to you, take

that."  (R. 4280a.)

68.     The prosecutor's deliberate, bad faith conduct in offering

knowingly false evidence severely prejudiced Orie Melvin and denied her a fair

trial.  The Superior Court erred in applying federal law and in determining the

facts and therefore Orie Melvin is entitled to relief under § 2254.

## GROUND FIVE:  THE REQUIREMENT THAT ORIE MELVIN WRITE LETTERS OF APOLOGY VIOLATES THE FIFTH AMENDMENT

69.     Intent on punishing Orie Melvin for perceived "arrogance," the

trial court required that Orie Melvin write letters of apology to her former staff and

all of the judges of the Commonwealth of Pennsylvania as a condition of her

sentence.  The trial court further directed that Orie Melvin pose in handcuffs for a

photograph to be sent to all judges in Pennsylvania together with the apology.  The

photograph, which was taken by the county photographer at the time of sentencing

and was under the control of the trial judge, was leaked to the press and published

the same day.

70.    The requirement that Orie Melvin write a letter of apology as a

condition of her sentence violates the Fifth Amendment.  See Mitchell v. United

States, 526 U.S. 314, 328-29, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999); Estelle v.

Smith, 451 U.S. 454, 463, 101 S. Ct. 1866, 68 L. Ed. 2d 259 (1981).[5]

71.    Orie Melvin raised the constitutionality of the apology

requirement in her appeal to the Pennsylvania Superior Court and therefore

exhausted available state law remedies in accordance with Order No. 218 issued

by the Pennsylvania Supreme Court.

72.    The Superior Court ignored Mitchell and other clearly

established federal precedent in ruling that the apology requirement did not violate

the Fifth Amendment.  Melvin, 103 A.3d at 51.  Orie Melvin is therefore entitled

to relief under § 2254.

--------------------

[5]  A copy of the letter that Orie Melvin was compelled to write under threat of
incarceration is attached hereto as Exhibit "H."

42

## ORIE MELVIN HAS SATISFIED ALL PREREQUISITES
## FOR BRINGING THIS PETITION

73.    All grounds for relief that Orie Melvin has raised in this Petition were included in Orie Melvin's direct appeal to the Pennsylvania Superior Court.  Pursuant to the Pennsylvania Supreme Court Order No. 218, Orie Melvin has thereby exhausted available state remedies.

74.    Orie Melvin has not previously filed any type of petition, application, or motion in a federal court regarding the conviction that she challenges in this petition.

75.    Orie Melvin does not have any petition or appeal now pending in any court, either state or federal, for the judgment she is challenging.

76.    The undersigned counsel have represented Orie Melvin at the preliminary hearing, arraignment and plea, trial, sentencing and appeal stages.

77.    Orie Melvin does not have any future sentence to serve after she completes the sentence for the judgement that she is challenging.

78.    This Petition is filed within one year of the date the judgment

43

of conviction became final.

79.    Orie Melvin is filing her supporting brief contemporaneously herewith and the brief is incorporated herein by reference.

80.    Orie Melvin respectfully requests that this Court schedule an evidentiary hearing on the issues raised in this Petition.

WHEREFORE, Orie Melvin respectfully requests that the Court vacate the conviction and sentence and dismiss the charges with prejudice and/or order a new trial, together with such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

Patrick A. Casey
PA ID No. 50626
pcasey@mbklaw.com
Donna A. Walsh (*pro hac vice forthcoming*)
PA ID No. 74833
Suzanne P. Conaboy (*pro hac vice forthcoming*)
PA ID No. 314036
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date:  September 18, 2015