# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN ORIE MELVIN,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **NO.** |
| | : | |
| **STEPHEN D. ZAPPALA,** | : | **SECTION 2254 PETITION** |
| **DISTRICT ATTORNEY OF** | : | |
| **ALLEGHENY COUNTY, and** | : | |
| **FRANK J. SCHERER.** | : | |
| **DIRECTOR, ALLEGHENY** | : | |
| **COUNTY PROBATION,** | : | |
| | : | |
| **Respondents.** | : | **ELECTRONICALLY FILED** |

---

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

---

Patrick A. Casey
Donna A. Walsh
Suzanne P. Conaboy
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Attorneys for Petitioner,
Joan Orie Melvin

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    I.    Orie Melvin Has Satisfied All Procedural Requirements for
        Relief in 28 U.S.C. §§ 2244 and 2254 . . . . . . . . . . . . . . . . . . . . . . 24

    II.    Orie Melvin Is Entitled To Relief Under 28 U.S.C. § 2254 . . . . . . . 25

        A.    Prosecuting Orie Melvin for Transgressing a Work Rule
               Violates Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        B.    Orie Melvin Was Denied Access to Electronic Evidence in
               Violation of the Fifth and Sixth Amendments and the
               Evidence Was Not Searched for <u>Brady</u> Material . . . . . . . . . . 38

        C.    The Prosecutor's Seizure and Use of Emails From Orie
               Melvin's Personal Email Account Violated the Fourth
               Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

        D.    The State Court Adjudication of the Prosecutorial
               Misconduct Issue Was Based on an Unreasonable
               Determination of the Facts and Was Contrary to
               Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

        E.    The Letters of Apology Required as a Condition of
               Sentence Violate the Fifth Amendment . . . . . . . . . . . . . . . . . 73

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

# TABLE OF AUTHORITIES

## CASES

Agee v. White, 809 F.2d 1487 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Antolik v. County of Erie, 93 Pa. Commw. 258, 501 A.2d 697 (1985) . . . . . . . . 32

Banks v. Dretke, 540 U.S. 1256, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004) . . 43

Beckert v. American Fed'n of State, County and Mun. Employees, 56 Pa.
    Commw. 572, 425 A.2d 859 (1981), aff'd, 501 Pa. 70, 459 A.2d 756
    (1983) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Berger v. United States, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 2d 1314 (1935) . 69

Bouie v. City of Columbia, 84 S. Ct. 1697, 378 U.S. 347, 12 L. Ed. 2d 894
    (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 37

Boyd v. Mintz, 631 F.2d 247 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215
    (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41, 42, 45

Buckley v. Valeo, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) . . . . . . . . 33

Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) . . . 57

Commonwealth v. Boczkowski, 577 Pa. 421, 846 A.2d 75 (2004) . . . . . . . . . . . 42

Commonwealth v. Burke, 566 Pa. 402, 781 A.2d 1136 (2001) . . . . . . . . . . . . . . 42

Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237 (2008) . . . . . . . . . . . 41, 42

Commonwealth v. Habay, 934 A.2d 732 (Pa. Super. 2007) . . . . . . . . . . . . . . . . 26

Commonwealth v. Melvin, 103 A.3d 1 (Pa. Super.
    2014) . . . . . . . . . . . . . . . . . . . . . 10, 21, 34, 41, 42, 43, 45, 54, 57, 70, 72, 76

Commonwealth v. Melvin, 79 A.3d 1195 (Pa. Super. 2013) . . . . . . . . . . 19, 76, 77

Commonwealth v. Orie, 88 A.3d 983 (Pa. Super. 2014), appeal denied, 99 A.3d
    925 (Pa. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Connally v. General Constr. Co., 46 S. Ct. 126, 269 U.S. 385, 70 L. Ed. 2d 322
    (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Court of Common Pleas of Erie County v. Pennsylvania Human Relations
    Comm'n, 546 Pa. 4, 682 A.2d 1246 (1996) . . . . . . . . . . . . . . . . . . . . . . . 31

Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) . . . 41, 44

In re Dobson, 517 Pa. 19, 534 A.2d 460 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 32

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431
    (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70, 72

Eshelman v. Commissioners of County of Berks, 62 Pa. Commw. 310, 436
    A.2d 710 (1981), aff'd, 502 Pa. 430, 466 A.2d 1029 (1983) (per
    curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Estelle v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 259 (1981) . . 77, 79

First Judicial Dist. of Pennsylvania v. Pennsylvania Human Relations Comm'n,
    556 Pa. 258, 727 A.2d 1110 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) . . . 77

Gamble v. State of Oklahoma, 583 F.2d 1161 (10th Cir. 1978) . . . . . . . . . . . . . 59

Gardner v. Peoples, 506 A.2d 479 (Pa. Commw. 1986) . . . . . . . . . . . . . . . . . . . 32

Hartman v. O'Connor, 415 Fed. Appx. 350 (3d Cir. 2011) . . . . . . . . . . . . . . . . 24

Jackson v. Virginia, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jefferson County Court Appointed Employees Ass'n v. Pennsylvania Labor
    Relations Bd., 603 Pa. 482, 985 A.2d 697 (2009) . . . . . . . . . . . . . . . . . . 26

Judges of the Court of Common Pleas of the Twenty-Seventh Judicial Dist. v. County of Washington, 120 Pa. Commw. 283, 548 A.2d 1306 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 32

Kolender v. Lawson, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Kremer v. State Ethics Comm'n, 503 Pa. 358, 469 A.2d 593 (1983) . . . . . . . . . . 32

Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 42, 45

L.J.S. v. State Ethics Comm'n, 744 A.2d 798 (Pa. Commw. 2000) . . . . . . . . . . 32

Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 25

Maleng v. Cook, 490 U.S. 488, 109 S. Ct. 1923 (1989) . . . . . . . . . . . . . . . . . . . . 24

Marks v. United States, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) . . 29

Mitchell v. United States, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78, 80

Nardone v. United States, 308 U.S. 338, 60 S. Ct. 266, 84 S. Ct. 307 (1939) . . . 57

Rabe v. Washington, 405 U.S. 313, 92 S. Ct. 993, 31 L. Ed. 2d 258 (1972) . . . . 29

Rice v. Collins, 546 U.S. 333, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) . . . . . . 23

Riley v. Gray, 674 F.2d 522 (6th Cir. 1981), cert. denied, 459 U.S. 948, 103 S. Ct. 266, 74 L. Ed. 2d 207 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Rogers v. Richmond, 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1960) . . . . . 80

Smith v. Goguen, 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974) . . . . . 33

Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) . . . . . 59

Tukes v. Dugger, 911 F.2d 508 (11th Cir. 1990), cert. denied, 502 U.S. 898, 112 S. Ct. 1273, 116 L. Ed. 2d 225 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

United States v. George, 228 U.S. 14, 33 S. Ct. 412, 57 L. Ed. 2d 712 (1913) . . 30

United States v. Kozminski, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

United States v. Standard Brewery, 251 U.S. 210, 40 S. Ct. 139, 64 L. Ed. 2d 229 (1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Wajert v. State Ethics Comm'n, 491 Pa. 255, 420 A.2d 439 (1980) . . . . . . . . . 32

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) . . 23

Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

## STATUTES

Pa. Const. Art. I, § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Pa. Const. Art. V, § 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Pa. Const. Art. V, § 10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Pa. Const. Art. V, § 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

28 U.S.C. § 2244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2244(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23, 24, 25, 46, 60, 81

28 U.S.C. § 2254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2254(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

28 U.S.C. § 2254(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 2254(d)(1)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 2254(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 Pa. C.S.A. § 903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 Pa. C.S.A. § 903(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 Pa. C.S.A. § 3926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 47

18 Pa. C.S.A. § 3926(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 30

18 Pa. C.S.A. § 4113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 30

18 Pa. C.S.A. § 4113(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 Pa. C.S.A. § 5301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

65 Pa. C.S.A. § 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Pa. R. Crim. P. 573 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Pa. R. Crim. P. 578 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **INTRODUCTION**

This case involves an unprecedented and constitutionally invalid effort by the District Attorney of Allegheny County to prosecute a sitting Pennsylvania Supreme Court Justice for allegedly violating a non-criminal work rule regulating political activity by court-appointed employees. The state courts violated clearly established federal law in refusing to dismiss the unconstitutional charges and in failing to afford Petitioner Joan Orie Melvin an evidentiary hearing at which to challenge the unconstitutional seizure of evidence from her personal email account. The state courts also misconstrued and misapplied federal law in its rulings concerning discovery matters and proven prosecutorial misconduct. Further, it was error of a federal constitutional magnitude to require Orie Melvin to write letters of apology as a condition of her sentence. In addition to failure to properly apply federal law, the Superior Court decision affirming Orie Melvin's conviction is rife with erroneous determinations of fact. These many errors significantly prejudiced Orie Melvin and deprived her of a fair trial and a fair sentencing in violation of the United States Constitution. Orie Melvin is therefore entitled to relief from this Court under 28 U.S.C. § 2254.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, this Petition arises from the unprecedented criminal prosecution of a sitting Pennsylvania Supreme Court Justice for allegedly misusing judicial resources.  Following a two-and-a-half year investigation by the District Attorney of Allegheny County that began with an unconstitutional seizure of Orie Melvin's entire personal email account, the District Attorney of Allegheny County, Stephen D. Zappala, filed a nine-count Criminal Complaint against Orie Melvin on May 18, 2012 alleging that she misused her judicial staff and the legislative staff of her sister, former Pennsylvania State Senator Jane Orie, to advance her 2003 and 2009 campaigns for the Pennsylvania Supreme Court.  (R. 20a.)[1]

Given Orie Melvin's previous tenure as a judge on the Allegheny County bench from 1990 to 1997 and the fact that Lisa A. Sasinoski, the wife of sitting Allegheny County Judge Kevin A. Sasinoski, was identified as a key prosecution witness, Orie Melvin moved on June 1, 2012 for appointment of an out-of-county judge to preside over her case.  (R. 30a.)  The motion was deferred

---

[1]  All references to "R__a" are to the Reproduced Record filed in connection with Orie Melvin's appeal to the Pennsylvania Superior Court.  The Reproduced Record is being submitted separately to this Court on a disk.

by Order dated June 4, 2012 pending the outcome of the preliminary hearing.  (R.

42a.)  Orie Melvin moved for reconsideration on June 12, 2012.  (R. 43a.)  The

trial court denied the motion on June 27, 2012.  (R. 71a.)  Orie Melvin then sought

review in the Pennsylvania Supreme Court by means of an Application for

Extraordinary Relief Pursuant to King's Bench Powers and/or Plenary Jurisdiction

on July 2, 2012.  (R. 78a.)  The application was denied on July 17, 2012.  (R.

122a.)

The case proceeded to a preliminary hearing before Magisterial

District Justice James Hanley on July 30-31, 2012.  (R. 138a-911a.)  All but two of

the charges against Orie Melvin were bound over for trial at the conclusion of the

preliminary hearing.  (R. 872-73a.)

Shortly thereafter, the case against Orie Melvin was joined with two

sets of charges that had been pending against her sister and former judicial

secretary, Janine Orie.  (R. 1025-41a.)  The District Attorney's pursuit of the Orie

family was well known by the time the charges against Orie Melvin were filed in

May 2012.

More than two years earlier, on April 7, 2010, Orie Melvin's sisters,

former State Senator Jane Orie and her judicial secretary, Janine Orie, were arrested and charged with theft of services and criminal conspiracy in connection with alleged use of Jane Orie's Senate staff to purportedly advance Orie Melvin's 2009 campaign for the Pennsylvania Supreme Court.  The trial on the charges against Jane Orie and Janine Orie began on February 7, 2011 and ended in a mistrial on March 3, 2011.  Following the mistrial, the District Attorney filed an additional 16 counts against Jane Orie (for a total of 34 criminal counts) and an additional 4 counts against Janine Orie (for a total of 6 criminal counts).  The judge who presided over the first trial of Jane Orie and Janine Orie, the Honorable Jeffrey A. Manning, severed the case against Janine Orie from the case against Jane Orie.  Following a second trial which began on February 29, 2012, Jane Orie was convicted on 14 of the 34 counts against her.  Jane Orie was found not guilty of all charges related to alleged use of government resources to support Orie Melvin's campaigns.

Having already secured a conviction against Jane Orie, and facing a trial of Janine Orie alone, the District Attorney brought criminal charges against Orie Melvin, then a sitting Supreme Court Justice, based on alleged misuse of judicial resources.

4

On August 14, 2012, the District Attorney filed a seven-count Information charging Justice Orie Melvin with three counts of theft of services in violation of 18 Pa. C.S.A. § 3926(b) (Counts 1-3), conspiracy to commit theft of services in violation of 18 Pa. C.S.A. § 903 (Count 4), misapplication of entrusted property in violation of 18 Pa. C.S.A. § 4113 (Count 5), official oppression in violation of 18 Pa. C.S.A. § 5301 (Count 6) and conspiracy to tamper with evidence in violation of 18 Pa. C.S.A. § 903 (Count 7). (R. 1020-24a.) The case was docketed at No. 201209885 in the Court of Common Pleas of Allegheny County. Orie Melvin entered a plea of not guilty.

Interestingly, prior to filing charges against Orie Melvin, the District Attorney admitted that he lacked authority to prosecute judges for allegedly using court resources for campaign purposes. In 2005, the District Attorney declined to file criminal charges against Magisterial District Justice Mary Grace Boyle arising from alleged use of her judicial office for campaign purposes due to "ambiguity" in the law and instead referred the matter to the Judicial Conduct Board. See Mike Bucsko, District Judge Investigated, PITTSBURGH POST-GAZETTE (Apr. 27, 2005, 12:00 a.m.), http://old.post-gazette.com/pg/05117/494907-55.stm. Similarly, in 2012, the District Attorney declined to investigate a complaint that Magisterial

District Justice Kim Hoots used her office and staff to aid her re-election campaign, explaining that prosecution was declined because Hoots "was a sitting judge." See James O'Toole, Complaints Against Judge Go To Conduct Board, PITTSBURGH POST-GAZETTE (May 13, 2011, 12:00 a.m.), http://www.post-gazette.com/stories/local/neighborhoods-east/complaints-against-judge-go-to-conduct-board-297548/.

While the District Attorney acknowledged the exclusive jurisdiction of the Judiciary over matters affecting court resources and court personnel in declining to prosecute Magisterial District Justice Boyle or Magisterial District Justice Hoots, he nonetheless elected to pursue criminal charges against Orie Melvin based on purported misuse of court resources. The prosecution of Orie Melvin is premised on alleged violation of the Guidelines Regarding Political Activity by Court-Appointed Employees adopted by the Pennsylvania Supreme Court on November 24, 1998 (referred to hereinafter as "the Guidelines"). (A true and correct copy of the Guidelines is attached hereto as Exhibit "A.")[2] The Guidelines state that "Court-appointed employees shall not be involved in any form of partisan political activity." (See Guidelines ¶ 2(a).) "Partisan political

---

[2] The Guidelines are included in the record at R. 1498a-1501a.

activity" is defined in the Guidelines to include, but not be limited to:

> [R]unning for public office, serving as a
> party committee-person, working at a
> polling place on Election Day, performing
> volunteer work in a political campaign,
> soliciting contributions for political
> campaigns, and soliciting contributions for a
> political action committee or organization,
> but shall not include involvement in non-
> partisan or public community organizations
> or professional groups.

(See Guidelines ¶ 1(a).)  The Guidelines, of course, are not criminal statutes.

Rather, responsibility for implementing the Guidelines is delegated to the

President Judge of each appellate court or county court of common pleas.  (Id. ¶

4.)  The Guidelines do not reference criminal prosecution but rather merely warn

that any employee who fails to "cease such partisan political activity at once" will

be "terminated from his or her position."  (Id. ¶ 3.)  In basing the charges against

Orie Melvin on the Guidelines, the District Attorney for the Commonwealth

theorized that, since political activity is prohibited by the Guidelines, any political

activity by Orie Melvin's judicial staff constituted criminal misuse of judicial

resources in violation of the charged offenses.

      On August 23, 2012, the case against Orie Melvin was joined with the

two cases that had been pending against her sister and former judicial secretary,

Janine Orie, since April 7, 2010 and December 16, 2011, respectively.  (R. 1025a.)

The charges against Orie Melvin and her sister were dissimilar and, at times,

conflicting and therefore joinder was inappropriate.  Among other things, Janine

Orie was charged with conspiring with Jane Orie's chief of staff, Jamie Pavlot, to

divert the resources of Jane Orie's legislative staff, (R. 922a, R. 935a), but Orie

Melvin was not charged with conspiring with Jamie Pavlot, (R. 1022-24a).  In

addition to the different charged conspiracies, there were other material

differences between the charges and Janine Orie faced additional charges for

tampering and solicitation to commit tampering.  (R. 949a.)  Nonetheless, the

Honorable Jeffrey A. Manning granted the District Attorney's motion for joinder

over Orie Melvin's objection on August 23, 2012 and required Orie Melvin to be

tried together with her sister whose services she was alleged to have diverted to

benefit her political campaigns.  (R. 1025-41a.)

At status conferences on September 14, 2012 and October 26, 2012,

counsel for Orie Melvin requested access to original electronic evidence that was

searched by the District Attorney, including two terabytes of original electronic

evidence seized by the District Attorney from the office of former State Senator

8

Jane Orie pursuant to a search warrant on December 11, 2009. (R. 1060-63a, 1097a-1104a.) Following argument on the issue, Judge Nauhaus agreed that Orie Melvin was allowed to inspect the original evidence seized from Jane Orie's offices and entered an Order dated October 29, 2012 granting access to Orie Melvin. (R. 1116a.) On the same date, Judge Nauhaus granted Orie Melvin's request to examine original computer equipment in the possession of the Superior Court which was searched pursuant to a subpoena issued by the District Attorney. (R. 1117a.)

Judge Nauhaus later withdrew both of the October 29, 2012 Orders. With respect to the Superior Court computers, Judge Nauhaus determined on November 19, 2012 that he did not have authority to allow the inspection. (R. 1276-83a, R. 1332a.) On the issue of the Legislative Branch computer equipment, Judge Nauhaus relied on the Assistant District Attorney's misrepresentation that the equipment was under grand jury seal, (R. 1307a) — in fact, the evidence was not under seal[3] — and, on this basis, vacated the October 29, 2012 Order granting

--------------------------------------------------

[3] Judge Zottola confirmed at the December 21, 2012 status conference that any grand jury seal was lifted when the presentment against Jane Orie was made public:

> And once the presentment was made public and the trial took place, that information's not going to be sealed.

Orie Melvin the opportunity to inspect the original electronic evidence.  (R. 1312a.)  Judge Nauhaus further ruled that any request to access the equipment should instead be presented to the Honorable John A. Zottola who had been assigned to handle grand jury matters.  (R. 1312a.)  Orie Melvin submitted the request to Judge Zottola at the December 21, 2012 status conference.  (R. 1751a.)  At that conference, Judge Zottola ruled that Orie Melvin would be permitted to inspect the original electronic evidence as long as the Commonwealth had the same opportunity.  (R. 1751-53a.)  On December 31, 2012, Orie Melvin submitted to Judge Zottola a proposed order authorizing her expert to examine the original evidence seized from Jane Orie's legislative office.  (R. 1698a-1700a.)  Following additional argument on January 11, 2013, however, Judge Zottola reversed his prior ruling and refused to allow Orie Melvin to examine the original evidence.[4]

_____

(R. 1744a.)

[4]  The Superior Court made an unreasonable determination of the facts in suggesting that Judge Nauhaus vacated the prior Order and referred the matter to Judge Zottola "after receipt of a motion for reconsideration filed by the Senate Republican Caucus."  Commonwealth v. Melvin, 103 A.3d 1, 32 (Pa. Super. 2014).  The Senate Republican Caucus did not move for reconsideration.  Rather, counsel for the Caucus wrote to Judge Nauhaus on November 14, 2012 to report that the Caucus was unable to make the original equipment available because it was in the possession of the District Attorney's Office and requested that the seized property be returned to the Caucus so that the Caucus could comply with the October 29, 2012 Order while protecting and preserving the Legislative privilege.  (R. 1188a, 1303a-04a.)  It is further noteworthy that the Caucus tried

(R. 2136a.)

Orie Melvin filed her Omnibus Pretrial Motion pursuant to Rule 578 of the Pennsylvania Rules of Criminal Procedure and supporting brief on December 7, 2012. (R. 1353a-1589a.) In her motion, Orie Melvin raised a number of substantive issues, including a challenge to the unconstitutional attempt by the Executive Branch to police the use of Judicial Branch resources, the unconstitutionality of criminal charges based on a non-criminal work rule, the untimeliness of the charges, the unconstitutional seizure of her personal email account and the Commonwealth's failure to make out a prima facie case at the preliminary hearing. Judge Nauhaus denied the motion in its entirety at the status conferences on December 21, 2012 and January 4, 2013. (R. 1726-34a, 1755-57a.) The trial court did not schedule or hold a suppression hearing or entertain substantive oral argument on Orie Melvin's motion to suppress the contents of her email account. Nor did Judge Nauhaus reach or decide the merits of Orie Melvin's challenges to the seizure. Instead, Judge Nauhaus ruled that the issue had already been decided by "a court of concurrent jurisdiction," presumably referring to a

---

unsuccessfully for some time to have its original equipment returned. The Commonwealth opposed the request. This issue was the subject of a separate appeal docketed at No. 1626 WDA 2013 in the Pennsylvania Superior Court.

11

similar motion filed by Jane Orie in her separate case.  (R. 1732a, R. 1726-34a.)[5] Orie Melvin was thus denied a full and fair opportunity to litigate this critical issue.

On January 7, 2013, Orie Melvin sought review of the trial court's refusal to dismiss the charges on separation of powers grounds by filing an Application for Extraordinary Relief Pursuant to King's Bench Power and/or Plenary Jurisdiction in the Pennsylvania Supreme Court.  (R. 1755a.)  The application was denied by Order dated January 10, 2013.  (R. 2104a.)

The case was tried before a jury in Allegheny County beginning on January 24, 2013.  Through his words and actions, the trial court regularly and repeatedly communicated to the jury his belief that the charges against Orie Melvin had substantial merit and that her defense was not worthy of credence. Among other things, the trial court:  expressed personal disbelief that court employees have no set or minimum number of work hours and then proceeded to question the Human Resource Director for the Administrative Office of Pennsylvania Courts after he admitted on cross-examination by defense counsel

---

[5] Orie Melvin was not charged for more than a year after Jane Orie's suppression hearing.  Orie Melvin had neither a right nor an opportunity to participate in Jane Orie's suppression hearing.

that judicial staffers were not required to devote any minimum number of hours in order to receive their full salary (R. 4744a, 4754-55a, 4758a); offered his personal opinion that time spent by employees performing political tasks was not <u>de minimis</u> and that co-defense counsel's strategy of tallying minutes allegedly spent on political tasks was not credible (R. 4093-94a); offered his personal opinion that various defense strategies were not persuasive or coherent (R. 3454-55a, 4488a, 4491a); improperly limited relevant cross-examination of a key Commonwealth witness (R. 3488-89a); concocted an excuse for his colleague's wife, a Commonwealth witness, who had committed perjury (R. 4262a, 4301-02a, 5530-34a); made inconsistent rulings concerning the admission of hearsay that overtly favored the prosecution (R. 3915a, 4700a, 5127a); and shut down questioning of Commonwealth witnesses concerning whether they had finished all their work (R. 5096a, 4240-41a, 4611-12a, 4616a).

At the close of the Commonwealth's case, Orie Melvin renewed the legal challenges advanced in her Omnibus Pretrial Motion and also challenged the sufficiency of the evidence introduced by the Commonwealth. (R. 5102-10a.) Her motion was denied. She renewed her challenges after the defense rested. (R. 5693-97a.)

13

The trial court scheduled a charging conference on February 14, 2013 to address the jury charge and the proposed additions to the Court's standard charges. (R. 5703-29a.) The Commonwealth did not request a charge on accomplice liability before the charging conference. The trial court did not include an accomplice charge in the proposed charge which was given to counsel. Nor did any party or the Court raise the issue of an accomplice charge during the charging conference. (R. 5703-29a.) Accordingly, counsel for Orie Melvin prepared for closing argument on February 15, 2013 with the understanding that no accomplice charge would be given.

The trial court instructed the jury after closing arguments on February 15, 2013. The charge did not include accomplice charge. The Commonwealth did not take any exception to the charge or request any additional charges. (R. 5802-40a.)

The jury began its deliberations on February 15, 2013. After the jury retired to begin deliberations, the jury submitted a question concerning "the definitions" of the various charges. (R. 5843a-5846a.) The Commonwealth then requested for the first time that the jury be given an instruction on accomplice liability. (R. 5842a.) Counsel for Orie Melvin objected (R. 5846a) and Judge

14

Nauhaus initially denied the request (R. 5847a), but, after the President's Day weekend, Judge Nauhaus reconsidered his ruling and agreed to give the new instruction over the objection of the defense, (R. 5863-66a).  Before the jury resumed deliberations on Tuesday, February 19, 2013, the trial court gave the new instruction on accomplice liability.  (R. 5858-70a.)  The jury requested additional explanation with respect to the accomplice charge two days later and the court gave an additional explanation.  (R. 5873a, 5877-79a.)

On February 21, 2013, the jury returned a verdict of guilty on Counts 1 through 4 (theft of services), Count 5 (misapplication of government property) and Count 7 (conspiracy to commit tampering).  The jury was unable to reach a unanimous verdict on the official oppression charge in Count 6.

Orie Melvin was sentenced by Judge Nauhaus on May 7, 2013 to a three-year term of home confinement followed by a two-year term of probation.  In addition, she was Ordered to pay a fine, costs and restitution totaling $127,979.97.  (R. 7779-81a, 7811-14a.)  This amount consisted of $55,000 in fines, $33,475.71 in restitution, $2,334.08 in court costs and the remainder relates to the costs of electronic monitoring.  (R. 7813-14a.)  The trial court also orally imposed as a condition of her sentence that Orie Melvin serve in a soup kitchen three days a

week and that she be required to write letters of apology to her former staff and all

of the judges in the Commonwealth of Pennsylvania.  (R. 7780-83a.)  Judge

Nauhaus directed that the apology was to be printed on the back of a picture of

Orie Melvin wearing handcuffs.  (R. 7783a.)

Before adjourning on May 7, 2013, Judge Nauhaus summoned the

county photographer to the courtroom and directed Orie Melvin to a room at the

rear of the bench where she was handcuffed and directed to pose for photographs.

The exchange was as follows:

| | |
|---|---|
| THE COURT: | Is the County photographer here? |
| MR. CLAUS: | I'm sorry, Your Honor? |
| THE COURT: | The County photographer?  Okay. I'm going to have a picture of you taken, and I'm going to have copies of that picture made in the amount of the Judges of the Commonwealth of Pennsylvania.  And you are going to apologize on each one of these pictures, and they are going to be sent to each Judge in Pennsylvania.  That will be part of the cost of prosecution. |
| | . . . |
| THE COURT: | Where is the photographer? |
| COUNTY PHOTOGRAPHER: | I'm here. |

16

| | |
|---|---|
| THE COURT: | All right.  The photographer, one of the deputy sheriffs, and Joan Orie Melvin and her attorney will retire into that room.  Anything else?  This matter is complete. |
| MR. CLAUS: | Nothing, Your Honor. |
| THE COURT: | Court is adjourned.  Jane, come on in. |

*(The following in-chambers discussion was held on the record.)*

| | |
|---|---|
| THE COURT: | This is the picture.  Put handcuffs on her. |

*(Whereupon, the deputy sheriff places handcuffs on Defendant Orie Melvin.)*

| | |
|---|---|
| THE COURT: | This is the picture I want.  This is the picture that goes to the rest of the Judiciary.  Law Claus will tell you how many copies he needs.  Take this picture. |

*(Whereupon the County Photographer takes a picture.)*

| | |
|---|---|
| THE COURT: | Okay.  Take them off. |

(See Tr. of Sentencing Hearing on May 7, 2013 at 64:24-65:8, 66:2-67:2.)  (R.

7781a-7784a.)

The photograph taken by the county photographer pursuant to Judge

Nauhaus's order was immediately leaked to the press and appeared in news reports

later that same day.  See Adam Brandolph, Former Justice Melvin Sentenced to 3

Years of House Arrest, 2 Years of Probation, TRIBLIVE (May 7, 2013, 11:34 a.m.),

http://triblive.com/news/adminpage/3946628-74/melvin-court-

orie#axzz3m0iszHWt; Paula Reed, Orie Melvin, Sister Guilty of Corruption, Put

17

on House Arrest, PITTSBURGH POST-GAZETTE (May 7, 2013, 11:45 p.m.),

http://www.post-gazette.com/news/state/2013/05/07/Orie-Melvin-sister-guilty-of-corruption-put-on-house-arrest/stories/201305070235.

     A re-sentencing hearing was scheduled for May 14, 2013 due to the trial court's concern that a three-year sentence of intermediate punishment (i.e., home confinement) may be unlawful.  (R. 7787a.)  On May 14, 2013, Judge Nauhaus resentenced Orie Melvin to three, one-year sentences of home confinement on counts 1, 3 and 4, with the sentences to run consecutively.  (R. 7789-90a.)  She was sentenced to two-years probation on both of the remaining counts, to run concurrent to one another and consecutive to the sentences of home confinement.  (R. 7790a.)  Orie Melvin challenged the constitutionality of the apology requirement at the re-sentencing hearing.  Judge Nauhaus declined to rescind or stay the requirement but agreed to take the issue under advisement on May 14, 2013.  (R. 7795-99a.)

     Orie Melvin filed a timely notice of appeal to the Pennsylvania Superior Court on May 20, 2013.  (R. 7815a.)  The appeal was docketed at No. 844 WDA 2013.  Judge Nauhaus issued an Opinion pursuant to Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure on September 12, 2013.  (A copy

of the Opinion is attached as Exhibit "B.")  (R. 7830a.)

While Orie Melvin's direct appeal from the criminal conviction was pending, Judge Nauhaus scheduled a probation violation hearing for October 15, 2013 because Orie Melvin had not written the letters of apology.  (R. 7867a.) Orie Melvin applied to the Pennsylvania Superior Court for a stay of the apology requirement.  The motion for stay was granted on November 6, 2013. Commonwealth v. Melvin, 79 A.3d 1195 (Pa. Super. 2013).  Despite the stay, and the fact that a criminal sentence cannot be "adjusted" or corrected more than 30 days after the sentence is imposed, Judge Nauhaus issued an Order on November 7, 2013 scheduling a hearing on "adjustments" to Orie Melvin's sentence for November 14, 2013.  At the hearing on November 14-15, 2013, Judge Nauhaus stayed the remainder of Orie Melvin's sentence over her objection.  (R. 7903a-7939a.)   Orie Melvin filed a timely notice of appeal from the November 15, 2013 Order on December 13, 2013.  The second appeal was docketed at No. 1974 WDA 2013 in the Pennsylvania Superior Court.

Both appeals were consolidated by Order of the Superior Court dated May 1, 2014.

In her appellate briefs filed in the Superior Court, Orie Melvin asserted 15 separate grounds for her appeal, including:  the charges infringe upon the Judiciary's exclusive power to supervise the courts; the charges are based on an internal work rule and therefore violate due process; the search warrant authorizing the seizure of Orie Melvin's personal email account was overbroad and therefore unconstitutional; it was error to not appoint an out-of-county judge; the extension of the statute of limitations for "public officers" does not apply to "judicial officers"; the charges should have been dismissed as a sanction for the prosecutor's knowing introduction of false evidence and subornation of perjury; the case should not have been joined with the case against Orie Melvin's sister, Janine Orie; Orie Melvin should have been allowed to examine original electronic evidence seized by the prosecution from the office of former State Senator Jane Orie and other electronic evidence in the possession of the Superior Court which was searched at the request of the prosecutor and the prosecutor should have reviewed the Senate evidence for Brady material; the Commonwealth failed to make out a prima facie case at the preliminary hearing; the trial court erred in excluding evidence relating to Orie Melvin's judicial productivity; the trial court deprived Orie Melvin of a fair trial by offering personal opinions and commenting on the evidence; the evidence was insufficient to support a conviction on any of

the charges; the trial court erred in instructing the jury on accomplice liability after the jury started deliberations; and the trial court erred in requiring Orie Melvin to write letters of apology as part of her sentence.

On August 21, 2014, the Superior Court affirmed Orie Melvin's conviction and sentence, with one exception and one modification. Specifically, the Superior Court struck the condition that Orie Melvin write letters of apology to every judge in Pennsylvania on the back of a photograph of herself in handcuffs. The Superior Court held that this condition was an "unorthodox gimmick" which was "imposed solely for the purpose of humiliating and shaming her." Melvin, 103 A.3d at 55. With respect to the apology letters, the Superior Court determined that the Fifth Amendment did not preclude the letters but Orie Melvin cannot be compelled to write the letters until her direct appeal rights had been exhausted. Id. at 51.

Orie Melvin filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court on September 25, 2014 and withdrew the Petition on October 27, 2014 before the Commonwealth filed its response and prior to any substantive action by the Court on the Petition. The Petition was docketed at No. 440 WAL 2014. Orie Melvin did not seek review in any other court. Nor did she

file a petition for <u>certiorari</u> in the United States Supreme Court.

Orie Melvin was required to appear for a re-sentencing hearing on November 4, 2014. At the hearing, Judge Nauhaus re-affirmed the total three-year term of home confinement and again required Orie Melvin to "write a personal letter of apology . . . to all sitting judges and justices in the state ONLY after approved by Judge Nauhaus." (<u>See</u> Modification Order of Sentence dated November 4, 2014.) She was also required to write letters of apology to all of her staff and to Jane Orie's staff. Whereas the original sentence authorized Orie Melvin, a devout Catholic, to attend daily Mass, (R. 7819a), Judge Nauhaus retracted this permission on November 4, 2014, but did allow Orie Melvin to "attend church services on Sunday, Christmas Eve and Holy Days of Obligation." (<u>Id.</u>)

## **ARGUMENT**

Habeas corpus is a "guard against extreme malfunctions in the state criminal justice system." <u>Jackson v. Virginia</u>, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment). A state prisoner is entitled to habeas corpus relief with respect to a claim that was adjudicated on the merits in state court if the

22

state court adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ if the state court ignores or misapprehends clear Supreme Court precedent or identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Under the "unreasonable determination of the facts" prong of § 2254(d)(2), the test is whether the state court's determination of the facts was unreasonable in light of the record. Rice v. Collins, 546 U.S. 333, 338-39, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006).

As the discussion below makes clear, both standards for habeas relief are met here. Both the trial and direct appeal in this case involve egregious malfunctions in the state criminal justice system which are properly addressed and corrected by this Court under § 2254.

23

I.      **Orie Melvin Has Satisfied All Procedural Requirements for Relief in 28 U.S.C. §§ 2244 and 2254.**

The procedural requirements for seeking habeas relief have been satisfied.

First, this petition is filed within one year after expiration of the time for seeking direct review of the Superior Court's August 21, 2014 decision and is therefore timely under 28 U.S.C. § 2244(d)(1)(A).

Second, Orie Melvin continues to serve her three-year state sentence of home confinement (to be followed by two years of probation) and is therefore "in custody" within the meaning of § 2254(a).  See Maleng v. Cook, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989); see also Hartman v. O'Connor, 415 Fed. Appx. 350, 352 (3d Cir. 2011) ("Since he is on supervised release, he is 'in custody' for purposes of habeas corpus.").

Third, Orie Melvin exhausted available state law remedies for purposes of § 2254(b)(1)(A) by presenting her claims to the Pennsylvania Superior Court.  See In re Exhaustion or State Remedies in Criminal and Post-Conviction Relief Cases, Order No. 218, 30 Pa. Bull. 2582 (Pa. May 9, 2000); see also

24

Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004) (petitioner's

presentation of claims to Pennsylvania Superior Court is sufficient under Order

No. 218 to exhaust available state remedies for federal habeas purposes).

Accordingly, all procedural requirements for habeas relief have been

satisfied.

## II.   Orie Melvin Is Entitled to Relief Under 28 U.S.C. § 2254.

For the reasons set forth below, the state court conviction in this case

is premised on rulings that are contrary to clearly established federal law and

unreasonable and incorrect determinations of fact and, as a result, Orie Melvin is

entitled to a writ of habeas corpus under § 2254.

### A.   Prosecuting Orie Melvin for Transgressing a Work Rule Violates Due Process.

It is not a crime in Pennsylvania for any judicial or other government

employee to participate in the political process.  Further, there is no criminal or

other statute in Pennsylvania that dictates how many hours judicial employees

must devote to their jobs or what their job descriptions may include.  Such matters

are left to the discretion of the employee's supervising judge.[6]  Unable to point to

any legislative enactment that prohibits political activity or warns employees that

engaging in political activity exposes them to criminal punishment, the District

---

[6]  The trial record is clear and undisputed that Pennsylvania appellate judges like
Orie Melvin had complete authority to establish employment policies in their
Chambers.  This distinguishes judicial staffers from legislative staffers who were
the subject of state court decisions such as Commonwealth v. Habay, 934 A.2d
732 (Pa. Super. 2007).  The Director for the Administrative Office of Pennsylvania
Courts, David Kutz, testified at the trial in this case that Orie Melvin and other
Superior Court judges had complete discretion to direct the work of their staff.
Kutz confirmed that Orie Melvin had the authority to set employment policies for
her law clerks and judicial secretaries, (R. 4729-30a, R. 4751-52a), to decide how
much leave time her law clerks and judicial secretaries would receive, (R. 4730a),
and to decide how many hours per day her law clerks and judicial secretaries were
required to work (R. 4730-31a).  Kutz also confirmed that employees in Orie
Melvin's chambers were not required to keep time records or report any particular
number of hours worked in order to receive their full salary.  (R. 4752-53a.)  There
was no 30-, 35- or 40-hour workweek requirement but rather Orie Melvin was
authorized to set the work hours for her law clerks and judicial secretaries.  (R.
4720-21a.)  In fact, Kutz testified that the employees in Orie Melvin's Chambers
would not have had to come to work at all to get their full pay.  (R. 4754a.)  Kutz's
testimony comports with the Pennsylvania Constitution which reserves to the
Judicial Branch the exclusive authority to supervise the courts, see, e.g., Jefferson
County Court Appointed Employees Ass'n v. Pennsylvania Labor Relations Bd.,
603 Pa. 482, 498, 985 A.2d 697, 707 (2009) ("The judicial branch's right to hire,
fire, and supervise its employees is derived from this constitutional source."), and
with Pennsylvania appellate authority which holds that court employees are
entitled to their full salary for time spent away from work so long as they were
excused from work by their supervising judge, see, e.g., Judges of the Court of
Common Pleas of the Twenty-Seventh Judicial Dist. v. County of Washington,
120 Pa. Commw. 283, 290, 548 A.2d 1306, 1309 (1988) (county controller has no
authority to withhold pay from court employees absent from work with
supervising judge's permission).

Attorney invoked a non-criminal, internal workplace policy as the basis for his

prosecution of Orie Melvin.  The District Attorney theorized that, since the

Pennsylvania Supreme Court adopted a policy barring judicial staffers from

engaging in certain public forms of political activity, Orie Melvin must have

committed theft of services, official oppression and conspiracy when staffers

allegedly performed political tasks.  This attempt to criminalize an alleged breach

of a work rule violates the due process guarantee in the Fifth Amendment and

corresponding clearly established federal law.

        The centerpiece of the District Attorney's prosecution of Orie Melvin

is the Pennsylvania Supreme Court's July 24, 1998 Order establishing Guidelines

Regarding Political Activity by Court-Appointed Employees.  (See Exhibit "A.")

The Guidelines are work rules.  They apply only to designated "court-appointed

employees" and require that such employees "shall not be involved in any form of

partisan political activity."  (See Guidelines ¶ 2(a).)  Consistent with the stated

goal of fostering the appearance of impartiality,[7] "partisan political activity" is

_____

[7] The Guidelines are incorporated into the Code of Conduct for Employees of the
Unified Judicial System which is available on the website for the Unified Judicial
System of Pennsylvania at
http://www.pacourts.us/assets/files/setting-429/file-212.pdf?cb=fa08e6.  The
Introduction to the Code of Conduct makes clear that the intent is to preserve the
integrity and independence of the judiciary.

specifically defined in the Guidelines to include public acts associated with a political campaign, including "running for public office, serving as a party committee-person, working at a polling place on Election Day, performing volunteer work in a political campaign, [and] soliciting contributions for political campaigns. . . ." (Id. ¶ 1(a).)[8]  Importantly, the Guidelines are not part of the Pennsylvania Crimes Code, do not refer to any criminal offense and do not mention criminal prosecution or punishment.  Responsibility for enforcing the Guidelines rests with "[t]he President Judge of each appellate court," (id.), not the district attorney.  Moreover, any employment-related discipline must be preceded by a warning.  The Guidelines expressly provide that "a court-appointed employee engaging in partisan political activity shall cease such partisan political activity at once or shall be terminated from his or her position." (Id. ¶ 3.)  Thus, there is no indication whatsoever that a violation of the Guidelines might result in criminal penalties.

Orie Melvin received no notice that a violation of the Guidelines

---

[8]  It is noteworthy that the Policy makes no reference to specific actions attributed to Orie Melvin's staffers, including coordinating Orie Melvin's judicial and campaign schedules, forwarding messages, summarizing Orie Melvin's written opinions and assisting Orie Melvin in responding to specific inquiries concerning her judicial work.  These actions are not political and are not prohibited by the Guidelines or any other Legislative or Judicial directive.

would be treated as a criminal offense and therefore basing criminal charges on the Guidelines violates the due process clause.  Due process, of course, demands fair notice of conduct that constitutes a crime.  "[T]he notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of constitutional liberty."  Marks v. United States, 430 U.S. 188, 191, 97 S. Ct. 990, 992-93, 51 L. Ed. 2d 260 (1977) (citations omitted). The Supreme Court has held that a criminal statute "must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties."  Connally v. General Constr. Co., 46 S. Ct. 126, 127, 269 U.S. 385, 391, 70 L. Ed. 2d 322 (1926) (citation omitted).  The Supreme Court further held that "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness."  Bouie v. City of Columbia, 84 S. Ct. 1697, 1702, 378 U.S. 347, 352, 12 L. Ed. 2d 894 (1964).  Consistent with these principles, the Supreme Court has rejected interpretations of criminal statutes that rely on matters outside the statutes to supply an element of the offense.  See, e.g., Rabe v. Washington, 405 U.S. 313, 316, 92 S. Ct. 993, 994, 31 L. Ed. 2d 258 (1972) ("[A] state may not criminally punish the exhibition at a drive-in theater of a motion picture where the statute . . . has not given fair notice that the location of

29

exhibition was a vital element of the offense."); United States v. Standard

Brewery, 251 U.S. 210, 220, 40 S. Ct. 139, 141, 64 L. Ed. 2d 229 (1920)

("Administrative rulings cannot add to the terms of an act of Congress and make

conduct criminal which such laws leave untouched."); United States v. George,

228 U.S. 14, 22, 33 S. Ct. 412, 415, 57 L. Ed. 2d 712 (1913) ("Where the charge is

of crime, it must have clear legislative basis.").

Orie Melvin's conviction in this case offends due process because she

received no notice that a violation of the Guidelines would expose her to criminal

punishment.  None of the charged offenses[9] reference the Guidelines, political

_____

[9] The theft of services statute, 18 Pa. C.S.A. § 3926, relates primarily to the
unauthorized diversion of cable television and similar services.  The section
of the statute charged in this case, section (b), states as follows:

> A person is guilty of theft if, having control over the
> disposition of services of others to which he is not
> entitled, he knowingly diverts such services to his own
> benefit or to the benefit of another not entitled thereto.

18 Pa. C.S.A. § 3926(b).  Section (a) of 18 Pa. C.S.A. § 4113 (Misapplication of
entrusted property and property of government or financial institutions), states:

> A person commits an offense if he applies or disposes of
> property that has been entrusted to him as a fiduciary, or
> property of the government or of a financial institution,
> in a manner which he knows is unlawful and involves
> substantial risk of loss or detriment to the owner of the
> property or to a person for whose benefit the property

30

activity or workplace rules.  No judicial official was ever before prosecuted or

convicted of a crime relating to alleged misuse of court resources.  In fact, the

Pennsylvania Constitution vests the Judiciary with exclusive authority to supervise

the conduct of judicial employees and the use of judicial resources, Pa. Const. Art.

V, § 10(a), and endows the Pennsylvania Supreme Court with the sole power to

adopt rules regulating the conduct of judges and court staff, Pa. Const. Art. V, §

10(c).[10]  Under Pennsylvania's Constitution, the discipline of Pennsylvania judges

———————————————

> was entrusted.

18 Pa. C.S.A. § 4113(a).  The conspiracy statute, 18 Pa. C.S.A. § 903(a), provides:

> A person is guilty of conspiracy with another person or
> persons to commit a crime if with the intent of promoting
> or facilitating its commission he: (1) agrees with such
> other person or persons that they or one or more of them
> will engage in conduct which constitutes such crime or
> an attempt or solicitation to commit such crime; or (2)
> agrees to aid such other person or persons in the
> planning or commission of such crime or of an attempt
> or solicitation to commit such crime.

18 Pa. C.S.A. § 903(a).

[10]  The Pennsylvania Supreme Court has repeatedly struck down attempted
intrusions into its exclusive supervision of the courts and court personnel.  See,
e.g., First Judicial Dist. of Pennsylvania v. Pennsylvania Human Relations
Comm'n, 556 Pa. 258, 262-63, 727 A.2d 1110, 1112 (1999) (Pennsylvania Human
Relations Commission has no jurisdiction to adjudicate discrimination complaints
involving judicial employees); Court of Common Pleas of Erie County v.
Pennsylvania Human Relations Comm'n, 546 Pa. 4, 7, 682 A.2d 1246, 1247 (1996)

is handled administratively through the Judicial Conduct Board, Pa. Const. Art. V,

§ 18, not through the criminal justice system. In these circumstances, and

especially because the charged offenses make no reference to workplace policies,

Orie Melvin had no reason to suspect that she would be exposed to criminal

prosecution if a member of her staff violated a work rule by engaging in the

---

("separation of powers doctrine requires that judges retain the authority to select, discharge and supervise court employees"); In re Dobson, 517 Pa. 19, 27, 534 A.2d 460, 464 (1987) (prohibiting court employees from running for judicial office notwithstanding legislative enactments because "it is for this Court, not the legislature, to determine what amounts to prohibited political activity by judicial employees"); Kremer v. State Ethics Comm'n, 503 Pa. 358, 363, 469 A.2d 593, 595-96 (1983) (financial disclosure provision in Ethics Law unconstitutional as applied to judges); Wajert v. State Ethics Comm'n, 491 Pa. 255, 420 A.2d 439 (1980) (invalidating provision in Ethics Act prohibiting former judges from practicing before court for one year); L.J.S. v. State Ethics Comm'n, 744 A.2d 798, 802-03 (Pa. Commw. 2000) (State Ethics Commission lacks jurisdiction to investigate judicial employee for alleged conflict of interest in violation of Ethics Act); Judges of the Court of Common Pleas of the Twenty-Seventh Judicial Dist. v. County of Washington, 120 Pa. Commw. 283, 290, 548 A.2d 1306, 1309 (1988) ("question of leave time of court employees is within the province of the judiciary" and is not subject to any "county policy"); Gardner v. Peoples, 506 A.2d 479, 483 (Pa. Commw. 1986) (striking county commissioner resolution mandating retirement of county employees at age 70 to extent it applied to court employees); Antolik v. County of Erie, 93 Pa. Commw. 258, 501 A.2d 697 (1985) (county nepotism rule unconstitutional as applied to court-appointed personnel); Eshelman v. Commissioners of County of Berks, 62 Pa. Commw. 310, 315, 436 A.2d 710, 713 (1981) (striking from arbitrator's award provisions relating to hiring, supervision and discharge of court employees), aff'd, 502 Pa. 430, 466 A.2d 1029 (1983) (per curiam); Beckert v. American Fed'n of State, County and Mun. Employees, 56 Pa. Commw. 572, 425 A.2d 859 (1981) (non-judicial government agency cannot review court employee's discharge), aff'd, 501 Pa. 70, 459 A.2d 756 (1983) (per curiam).

otherwise completely lawful act of participating in a political campaign.  Basing

criminal charges on the Guidelines therefore violates of the constitutional fair

warning requirement.

Basing criminal charges on an employment policy also violates due

process because it encourages arbitrary enforcement.  In addition to requiring

notice of prohibited conduct, the due process clause demands that a criminal

statute "establish minimal guidelines to govern law enforcement."  Kolender v.

Lawson, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983).  None

of the offenses charged in this case draw clear lines between the kinds of

workplace rule violations that are criminal and those that warrant only employee

discipline.  This is especially problematic here since the criminal charges involve

constitutionally protected political activity.  See Buckley v. Valeo, 424 U.S. 1, 14,

96 S. Ct. 612, 632, 46 L. Ed. 2d 659 (1976) ("The First Amendment affords the

broadest protection to . . . political expression . . . ."); Smith v. Goguen, 415 U.S.

566, 573, 94 S. Ct. 1242, 1247, 39 L. Ed. 2d 605 (1974) ("When a statute's literal

scope . . . is capable of reaching expression sheltered by the First Amendment, the

[due process] doctrine demands a greater degree of specificity than in other

contexts.").  If any transgression of a workplace rule can be construed as theft of

33

services, then every employee disciplinary matter (e.g., using a work computer to access a personal social media account or a work phone to make a personal call) is a potential crime and prosecutors would have unfettered discretion to decide for themselves which workplace conduct merits criminal punishment. Thus, the "risk of arbitrary or discriminatory prosecution and conviction" inherent in the District Attorney's interpretation of so-called workplace theft also renders the criminal charges invalid under the due process clause. See United States v. Kozminski, 487 U.S. 931, 949, 108 S. Ct. 2751, 2763, 101 L. Ed. 2d 788 (1988).

The Superior Court relegated Orie Melvin's due process challenge to a footnote in its decision. Although the Superior Court recognized elsewhere in its opinion that "[n]one of the crimes for which [Orie Melvin] was prosecuted or convicted specifically proscribes political activity," Melvin, 103 A.3d at 16, the Superior Court ruled in note 4 that the charges do not fail "for lack of notice of potential criminal sanctions" because "Orie Melvin was not convicted for violating the Supreme Court's rule against political activity," id. at 16, n.4. This determination of the facts is patently unreasonable.[11] Contrary to the Superior

---

[11] The Superior Court exhibited confusion on this issue. The Court stated in its Opinion that "Orie Melvin was not criminally prosecuted for using her judicial staff to advance her political aspirations," Melvin, 103 F.3d at 15-16, and later in the same paragraph that "Orie Melvin's convictions were based on her theft of

34

Court's determination, it is plain from the record that the criminal charges against

Orie Melvin are <u>overtly</u> <u>based</u> on the prohibition against political activity in the

Guidelines.  The Commonwealth referenced the Guidelines in the Information (R.

1023a), admitted in court filings that the theft of services, negligent entrustment

and official oppression charges are premised on the Guidelines, (<u>see</u> Commw. Br.

in Response to Def.'s Omnibus Pretrial Mot. at 8 (theft of service charges in

Counts 1, 2 and 4 are based on assertion that November 24, 1998 "Order of Court .

. . prohibits politicking by court personnel even on their 'own time'"); <u>see</u> <u>also</u>

Commw. Br. filed in Superior Court at 24-25), repeatedly questioned witnesses

about the Guidelines at trial (R. 4215-17a, 4430-33a, 4540a-43a, 4587-88a, 4651-

53a), introduced court personnel records relating to the Guidelines as trial exhibits

(Ex. 3; Ex. 34, Tab 4; Ex. 32, Tab 27; Ex. 38; Ex. 40), and invoked the Guidelines

in closing argument (R. 5784-85a, 5794a).

      In fact, the Assistant District Attorney argued in his closing that the

Guidelines supplied the "scienter" necessary for a conviction on each of the

criminal charges:

_____

services by using her judicial staff . . . to advance her campaign for a seat on the
Pennsylvania Supreme Court."  <u>Id.</u> at 16.

But in each of these cases against each of the two
respective defendants there is language that talks about
what we in the law call scienter, or guilty knowledge,
whether or not the defendant knew what they were doing
was wrong. I would submit that when I talk about that
on each of the respective elements of the crimes, I'm not
going to develop them as I am right now. Here I'm
going to talk about them all collectively.

First of all, you saw the Policy Manual of the Court.
Nowhere in that Policy Manual does it permit political
work to be done for a Judge who is aspiring a higher
office. It's just not there. It is not there. Nor did Mr.
Faber say that working for a sister of a Legislator on
company time in the company office, in the Senate
chambers on Senate equipment, that's not permitted
either. What they do, accurately, outside of the office,
that's one thing. But you can't do it inside the office.
And that's what we are here for. That's what this case is
all about.

(R. 5780-81a; see also Assistant District Attorney's Closing Argument at R. 5794a

("[T]he rule tells them they are not supposed to be doing political work, even

outside the office. Here, all of these court employees should have been on notice

that that was not permitted.").) The Superior Court's factual determination that

Orie Melvin was not prosecuted for violating a work rule is patently unreasonable

since it ignores and conflicts with the actual record.

In addition to making an unreasonable determination of fact, the

Superior Court arrived at a conclusion that is contrary to clearly established

36

federal law.  The Superior Court failed to consider or appreciate that there is

nothing in the charged offenses that put Orie Melvin on notice that criminal

liability hinged on an internal, administrative policy established by the Supreme

Court, not the General Assembly.  The Superior Court did not address the fair

warning requirement at all in its decision.  As a result, its ruling is directly

contrary to clearly established federal law which holds that a criminal statute

"must give fair warning of the conduct that it makes a crime."  See, e.g., Bouie,

378 U.S. at 351, 84 S. Ct. at 1701.

       Simply stated, basing criminal charges on a standard of conduct in an

internal workplace rule violates the due process requirement that criminal statutes

must provide actual notice of the conduct that is prohibited as well as the

requirement that criminal statutes must provide sufficiently specific limits to

govern law enforcement.  Since there is nothing in the criminal statutes charged in

this case that put Orie Melvin or other Pennsylvania judges on notice that

violation of the Guidelines would expose them to criminal prosecution and there

are no parameters in the charged offenses to govern law enforcement in

determining which workplace rule violations warrant criminal punishment, the

criminal charges against Orie Melvin violate due process.  For either or both of

these reasons, Orie Melvin's convictions on Counts 1, 2, 4 and 5 should be vacated.

> **B.    Orie Melvin Was Denied Access to Electronic Evidence in Violation of the Fifth and Sixth Amendments and the Evidence Was Not Searched for <u>Brady</u> Material.**

The District Attorney seized and/or searched a large quantity of electronic data from the offices of Orie Melvin's sister, former State Senator Jane Orie, and from the offices of the Pennsylvania Superior Court, but Orie Melvin was not permitted to inspect or examine this original evidence and the District Attorney never reviewed the electronic materials for exculpatory evidence.  This was in direct violation of the Fifth and Sixth Amendments and clearly established federal law.

On December 11, 2009, less than one month after Orie Melvin was elected to a seat on the Pennsylvania Supreme Court, the District Attorney seized 12 computer hard drives, a server and numerous portable storage devices — more than two terabytes of data — from the offices of former State Senator Jane Orie. (R. 8322-23a.)  The Senate Republican Caucus immediately asserted legislative privilege over the seized materials.  In an effort to address the privilege

implications, the supervising judge of the grand jury appointed a Special Master to review the seized material "for the purposes of privilege, relevance and any other evidentiary purpose." (See Order of Court dated December 29, 2009.) (The Order is printed at R. 7940a.  A true and correct copy of the Order is also attached as Exhibit "C.")  The Special Master's review related only to the grand jury investigation involving Jane Orie.  The materials seized from Jane Orie's office were never reviewed for purposes of identifying any Brady information, including any exculpatory information relating to Orie Melvin.

Shortly after the charges against her were bound over, Orie Melvin requested of the trial court that she be permitted to examine the electronic evidence seized by the District Attorney in order to prepare for trial and identify evidence for use in her defense.  (R. 1060-63a, 1097a-1104a.)  The trial court initially recognized Orie Melvin's right of inspection and, on October 29, 2012, entered an Order granting Orie Melvin's expert access to the original computer hard drives and electronic files seized by the District Attorney.  (R. 1116a.) Shortly thereafter, however, Judge Nauhaus withdrew the Order and referred the matter to the judge presiding over grand jury matters, the Honorable John A. Zottola, based on the Assistant District Attorney's misleading representation that

the material was under seal and subject to the jurisdiction of the grand jury judge. (R. 1307a, 1312a.) The material was not under seal. Rather, Judge Zottola confirmed that any grand jury seal was lifted when the charges against Jane Orie were filed. (R. 1744a.) Nonetheless, Judge Zottola refused to allow Orie Melvin to access the original evidence which was at all relevant times in the sole possession, custody and control of the Allegheny County District Attorney. (R. 2136a, 8311a, 8313a, 8315a.)

Neither the District Attorney, nor the Special Master, nor anyone else reviewed the seized material to identify potentially exculpatory information pursuant to the constitutional duty recognized in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Instead, the hard drives and computer equipment were searched using specific terms supplied by the District Attorney and the Special Master reviewed these search results for the purpose of identifying material protected by the legislative or other privilege. (R. 8316a.) The failure to search for or produce exculpatory evidence is a plain Brady violation. The Supreme Court has made clear that a prosecutor has a non-delegable "duty to learn of any favorable evidence known to others acting on the government's behalf in the case." See, e.g., Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567,

131 L. Ed. 2d 490 (1995).  The District Attorney breached this obligation in failing to look for exculpatory evidence in the seized material.  Further, withholding the seized evidence from Orie Melvin and refusing to allow an opportunity to examine the evidence violated the basic right of the accused to examine the evidence.  See, e.g., Davis v. Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974).

The Superior Court did not consider or apply this controlling federal authority and made a clearly erroneous factual determination in ruling that the seized electronic evidence was "within the exclusive control of Judge Zottola and the Special Master" and therefore not subject to Brady.  Melvin, 103 A.3d at 33. The record shows that the evidence was in the possession of the District Attorney's Office.  Further, the Superior Court based its ruling on Pennsylvania state court decisions interpreting the Pennsylvania discovery rules,[12] not federal law

_____

[12] The Pennsylvania cases cited by the Superior Court on page 33 of its Opinion involved the different question of whether the attorney for the Commonwealth is obligated under Rule 573 of the Pennsylvania Rules of Criminal Procedure to make available to the defense information that is in the possession of the police. Each of the cases cited by the Superior Court, however, expressly recognizes that, while Rule 573 may not require the attorney for the Commonwealth to produce material in the possession of the police as part of the discovery process, the Commonwealth is nonetheless charged with possession of exculpatory information held by other governmental agencies and is therefore required to identify and make such information available to the defense under Brady.  See Commonwealth

interpreting a prosecutor's obligations under Brady.  As a result, the Superior

Court's determination is contrary to clearly established federal law which holds

that a prosecutor's Brady obligation extends to exculpatory evidence in the

possession of other agencies of the same government bringing the prosecution.

See, e.g., Kyles, 514 U.S. at 437, 115 S. Ct. at 1567 ("the individual prosecutor

has a duty to learn of any favorable evidence known to the others acting on the

government's behalf in the case. . .").  Since the seized evidence remained in the

custody of the District Attorney at all relevant times, (R. 8311a, 8313a, 8315a), the

Superior Court erred in failing to apply and follow this authority.

The Superior Court also erred in finding that the seized electronic

evidence was available to Orie Melvin through other sources.  Melvin, 103 A.3d at

_____

v. Collins, 598 Pa. 397, 424, 957 A.2d 237, 253 (2008) ("If the undisclosed
evidence implicates Brady (i.e., if it is favorable to the accused and its non-
disclosure resulted in prejudice to his case), then the Commonwealth is charged
with its possession even while it is exclusively in the custody of police.") (citing
Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S. Ct. 1555, 131 L. Ed. 2d 490
(1995)); Commonwealth v. Boczkowski, 577 Pa. 421, 458 n.24, 846 A.2d 75, 97
(2004) (recognizing that Commonwealth is obligated to produce "exculpatory
evidence in possession of the government (even if not in the prosecutor's
possession)"); Commonwealth v. Burke, 566 Pa. 402, 413, 781 A.2d 1136, 1142
(2001) ("[U]nder Kyles, the prosecution's Brady obligation clearly extends to
exculpatory evidence in the files of police agencies of the same government
bringing the prosecution.").  While Collins and Burke cite the correct standard in
Kyles, the Superior Court failed to follow Kyles and its decision is therefore
contrary to federal law.

42

34.  This is not a reasonable or correct determination of the facts.  In fact, the

seized material was at all times subject to a claim of privilege asserted by the

Senate Republican Caucus and therefore was not available to Orie Melvin.  The

transcript which the Superior Court cites as the basis for its erroneous finding —

the transcript of the Status Conference on January 11, 2013, <u>Melvin</u>, 103 A.3d at

34 — confirms several times that the desktop computers and file servers seized

from Jane Orie's offices by the District Attorney remained subject to a claim of

privilege asserted by the Senate Republican Caucus and, for this reason, the

material was not available to Orie Melvin.  (R. 2131a (Assistant District Attorney

stated: "[T]o the best of my knowledge, that privilege is still out there."); R. 2133a

(privilege asserted with respect to contents of desktop computers and file server);

R. 2136a (Judge Zottola ruled: "I'm going to stick to my original determination

when I was supervising the matter to make sure that those privileges were

protected.").)  The Superior Court's ruling to the contrary is not factually correct.

Moreover, the decision is contrary to settled federal law which holds that the duty

to identify and produce exculpatory information belongs to the prosecution and the

prosecutor cannot avoid this duty by suggesting that the accused should look for

the exculpatory information elsewhere.  <u>Banks v. Dretke</u>, 540 U.S. 668, 696, 124

S. Ct. 1256, 1275, 157 L. Ed. 2d 1166 (2004) ("A rule . . . declaring 'prosecutor

43

may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process.").

In addition, Orie Melvin was not allowed to examine computer equipment which was used by her judicial staff and which was in the possession of the Pennsylvania Superior Court.  The Commonwealth caused the equipment to be searched pursuant to a grand jury subpoena.  Orie Melvin's request to have her own expert examine and conduct searches on the computer equipment was initially granted by Order dated October 29, 2012, (R. 1117a), but this Order was revoked on November 19, 2012.  (R. 1276a, R. 1332a.)  This was also a violation of Orie Melvin's rights under the Fifth and Sixth Amendments.  See, Davis, 415 U.S. at 315, 94 S. Ct. at 1110.  The Superior Court once again misapplied clearly established federal law in denying Orie Melvin the opportunity to examine the original evidence.

In sum, the District Attorney seized and searched vast quantities of electronic evidence but never searched the evidence for exculpatory information and deprived Orie Melvin of the opportunity to examine the evidence both to identify information to aid her defense and to evaluate the information which the District Attorney obtained through his searches.  The Superior Court failed to

44

appreciate that preventing Orie Melvin from examining the evidence violated the

Fifth and Sixth Amendments and clearly established federal authority and that the

prosecutor's failure to search for exculpatory evidence violated the Supreme

Court's directives in Brady and Kyles.  The convictions on all counts should

therefore be vacated under § 2254(d) and the case remanded with specific

direction to the prosecutor to fulfill his obligation under Brady.  Further, Orie

Melvin should be permitted to examine all electronic evidence seized and/or

searched by the District Attorney.

> **C.    The Prosecutor's Seizure and Use of Emails From Orie Melvin's Personal Email Account Violated the Fourth Amendment.**

Both in her pre-trial motion and in her direct appeal to the Superior

Court, Orie Melvin challenged the District Attorney's seizure of the entirety of her

personal email account.  The Superior Court agreed that the search violated the

Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution.  Melvin,

103 A.3d at 19.  Specifically, the Court found that "the warrant permitted the

seizure of every email in the account without any attempt to distinguish the

potentially relevant emails from those unrelated to the investigation" and, as a

result, was "overbroad."  Id. at 18-19.  Although there was no suppression hearing

45

and no factual record concerning the extent to which the illegally seized evidence tainted the Commonwealth's case against Orie Melvin, the Superior Court concluded that the failure to suppress the seized email messages — which the Superior Court erroneously calculated at ten; in fact, thousands of email messages were seized — was harmless or the prejudice to Orie Melvin was de minimis.  Id. at 21-22.  In so ruling, the Superior Court misapplied clearly established federal law and made an unreasonable determination of fact and therefore Orie Melvin's conviction should be vacated under § 2254.

The full procedural background is necessary to appreciate the complete breakdown in court processes that deprived Orie Melvin of a full and fair hearing on this critically important issue.

By way of background, on January 5, 2010, Allegheny County Detective Lyle M. Graber applied to Allegheny County Court Judge John A. Zottola for a warrant to search for and seize the entirety of Orie Melvin's personal and campaign email accounts, specifically "[a]ll stored communications and other files reflecting communications to or from user account/user names oriemelvin@yahoo.com, judgeoriemelvin4supreme@yahoo.com and orieonthemove@yahoo.com . . . between August 1, 2009 and the present." (R.

46

1556a.)  The ten-page Affidavit of Probable Cause makes no reference to any investigation of Orie Melvin, but rather offers as ostensible basis for the search that Orie Melvin's sister, former State Senator Jane Orie, was suspected of violating the theft of services statute (18 Pa. C.S.A. § 3926) and the Public Official and Employee Ethics Act (65 Pa. C.S.A. § 1103) by assigning her legislative staff to perform campaign work on state time.  (R. 1558-68a.)

On this flimsy record, the Honorable Judge A. Zottola signed the warrant authorizing the seizure of all messages in both Orie Melvin's personal and campaign accounts from August 1, 2009 to the date of the application, January 5, 2010.  (R. 1555a.)  The warrant was delivered on Yahoo! in Sunnyvale, California by fax on January 5, 2010.  (R. 1555a.)  In response, Yahoo! sent the Commonwealth a CD-Rom containing more than 15,000 of Orie Melvin's personal email messages on January 22, 2010.  (R. 1585a, R. 5889a.)  Graber immediately began to review the seized emails.  When he identified privileged communications, he claims he discontinued his review and sought a second warrant which provided some specificity concerning the materials to be reviewed. (R. 1585-86a.)[13]

_____

[13]  In the Affidavit of Probable Cause submitted in connection with the application for a subsequent warrant, Graber admitted that he reviewed the contents of emails

47

On December 7, 2012, Orie Melvin moved to suppress the contents of her email account on the grounds that the initial warrant was general and overbroad and could not be salvaged by the second warrant since Detective Graber admittedly searched the material prior to applying for the second warrant. (R. 1353-55a.) Without scheduling or holding a suppression hearing, Judge Nauhaus denied the motion at the December 21, 2012 status conference. Judge Nauhaus did not receive testimony or other evidence, did not entertain substantive oral arguments and did not reach any factual determinations, but rather concluded that Orie Melvin was not entitled to suppression because another judge, the Honorable John Zottola, had denied Jane Orie's motion to suppress the contents of Jane Orie's email box. Judge Nauhaus explained his rationale as follows:

---

from the judgeoriemelvin4supreme@yahoo.com account, the subject lines of emails in the account and specific emails that referenced particular subject matter. (R. 1585a.) With regard to the oriemelvin@yahoo.com account, Graber admitted that he reviewed the emails, that he sorted the emails by sender and recipient, that he reviewed the senders and recipients for names that he recognized, that he searched for and found emails relating to an individual not named in the January 5, 2010 search warrant affidavit (Robert Kramm) and that he reviewed the content of emails between Orie Melvin and her sister, Jane Orie, until he came upon email messages involving counsel that he believed may contain privileged communication. (R. 1585a.) At this point, Graber claimed that he discontinued his review and applied to Judge Zottola for an additional warrant "to specifically address any privileged material." (R. 1586a.) The application was presented on January 27, 2010 and approved on the same date. (R. 1573a.)

48

> My problem with No. 5 [the paragraph number
> associated with Orie Melvin's suppression argument in
> her omnibus motion], quite frankly, is that's a decision
> that was made by a court of concurrent jurisdiction.
> John Zottola made that decision, and I don't know that I
> can overturn it. As with No. 4 [the paragraph number
> associated with Orie Melvin's request for severance],
> Judge Manning made that decision. I do not believe I
> have the authority to —
>
> Unless somebody can show me that something has
> changed since Judge Manning made that decision, I
> don't have the authority to overturn that.

(R. 1732-33a; see also R. 1354a (Orie Melvin's Omnibus Pretrial Motion).)

Following her conviction, Orie Melvin raised the unconstitutional

seizure in her Statement of Errors Complained of on Appeal Pursuant to Pa. R.

App. P. 1925(b) which was filed on June 13, 2013. (R. 7831a.) In the September

12, 2013 Opinion directed at the Statement of Errors Complained of on Appeal,

Judge Nauhaus wrongly asserted that Orie Melvin's motion to suppress had not

been presented to him and proceeded to adopt the analysis offered by the

Honorable Jeffrey A. Manning in denying Jane Orie's suppression motion. Judge

Nauhaus wrote:

> This issue was not presented to this Court. Furthermore,
> this issue was addressed by the Honorable Jeffrey A.
> Manning in his Memorandum Opinion Re: Suppression

in Commonwealth v Jane C. Orie and Janine Orie at
CC201010285, CC2010010286.  This Court adopts that
analysis.

(R. 7843a.)

Orie Melvin included the suppression issue in her direct appeal to the
Superior Court.  After she filed her principal brief on December 4, 2013 but before
oral argument on May 20, 2014, the Superior Court issued its Opinion in
connection with Jane Orie's direct appeal.  See Commonwealth v. Orie, 88 A.3d
983 (Pa. Super. 2014), appeal denied, 99 A.3d 925 (Pa. 2014).  The Superior Court
determined in Jane Orie's case that the seizure of the entirety of Jane Orie's
personal email account was unconstitutionally overbroad but no relief was
warranted because (unlike the case with Orie Melvin) the material seized from
Jane Orie's email account was not actually searched by the Commonwealth
pursuant to the unconstitutional warrant but rather the search occurred after the
Commonwealth secured a second warrant with the requisite level of specificity.
The Superior Court explained:

> [W]e find the January 8, 2010 warrant for Orie's AOL
> account Janeorie@aol.com, seeking, inter alia, "all stored
> communications and other files . . . between August 1,
> 2009 and the present, including all documents, images,

50

> recordings spreadsheets or any other data stored in
> digital format" was overbroad.  The affidavit attached to
> the January 8, 2010 search warrant provided probable
> cause that evidence of criminal activity could be found
> therein, and was limited to the period from August 2009
> to January 10, 2010, but did not justify the search of all
> communications for that period.  However . . . law
> enforcement did not conduct a search pursuant to the
> January 8, 2010 warrant, but rather only seized the
> entirety of the evidence for a later search of the contents.
> The search of the seized information in the AOL account
> was conducted pursuant to the second, more detailed,
> March 10, 2010 warrant that provided the particularity
> the earlier warrant lacked.  Given these unique facts, we
> similarly find no violation of Orie's constitutional rights.

Id. at 1008-09.

Orie Melvin cited the Jane Orie decision in her reply brief filed with the Superior Court on March 24, 2014 and posited at oral argument that the Superior Court's reasoning in the Jane Orie case required the conclusion that the contents of Orie Melvin's personal email account should have been suppressed. (See, e.g., Reply Br. for Appellant at 11-12.)  At oral argument on May 20, 2014, the Assistant District Attorney argued that the Jane Orie decision was not controlling and did not require reversal since the Commonwealth did not make evidentiary use of the contents of Orie Melvin's email account.  This was the first time that the Commonwealth made this inaccurate assertion.  Counsel for Orie

Melvin immediately advised the panel that this was not an accurate statement and offered to provide the panel with a representative sample of emails from Orie Melvin's email account which were offered by the Commonwealth and admitted into evidence at trial.  The Honorable Christine Donohue directed counsel for Orie Melvin to first show the exhibits to counsel for the Commonwealth and then submit them to the Court.  Counsel for Orie Melvin supplied a list of the exhibits to the Assistant District Attorney immediately after the argument on May 20, 2014 and then, on May 22, 2014, sent a letter to the panel enclosing copies of the referenced emails which were described as only "a partial list."  The letter (which is attached hereto as Exhibit "D") states in pertinent part as follows:

> Pursuant to Judge Donohue's direction at oral argument on Tuesday, May 20, 2014, the following is a partial list of emails from Appellant Joan Orie Melvin's personal account that the Commonwealth offered into evidence and the location in the record at which the emails were admitted over Orie Melvin's objection in her Omnibus Pretrial Motion.
>
> . . .
>
> The email messages are identified on page 35 of Appellant's Brief and page 12 of Appellant's Reply Brief.

(See May 22, 2014 Letter at p.1.)  (Emphasis added.)

The Assistant District Attorney objected to making the emails part of the appellate record. (See Commw.'s Objection Pursuant to Pa. R.A.P. 2501 to the Manner of Appellant's Post Oral Argument Communication filed on May 23, 2014.) By Per Curiam Order dated May 28, 2014, the Superior Court overruled the Commonwealth's objection and allowed Orie Melvin's "partial list of emails" from her personal account to be filed to the docket. The Order states in pertinent part as follows:

> AND NOW, this 28th day of May, 2014, upon receipt of Appellant's correspondence dated May 22, 2014, which is a "partial list of emails from Appellant Joan Orie Melvin's personal account that the Commonwealth offered into evidence and the location in the record at which the emails were admitted over Orie Melvin's objection in her Omnibus Pretrial Motion," with attachments, the Prothonotary is hereby directed to file said post submission communication at Docket No. 844 WDA 2013. The Commonwealth's objection to the manner of Appellant's post oral argument communication to the panel is noted.

(See Per Curiam Order dated May 28, 2014.) (Emphasis added.) (A true and correct copy of the Order is attached hereto as Exhibit "E.")

The Superior Court issued its decision in Orie Melvin's direct appeal three months later on August 21, 2014. Among other things, the Superior Court

found that the warrant authorizing the search of Orie Melvin's personal email account was identical to the warrant declared unconstitutional in Jane Orie's case and consequently the seizure of Orie Melvin's email account was likewise unconstitutional. Melvin, 103 A.3d at 19. The "unique facts" which prevented suppression in Jane Orie's case — i.e., the Commonwealth "did not conduct a search of [the email account's] contents until after obtaining a second warrant that provided the particularity that the first warrant had lacked," id. — are missing in Orie Melvin's case. The Superior Court explained: "[A]lthough the Commonwealth did subsequently obtain a second warrant that provided the specificity lacking in the first warrant, the certified record reflects that the Commonwealth began its review of Orie Melvin's emails obtained pursuant to the first warrant *before* it obtained the second warrant." Id. As a result, the Superior Court held that the seizure of Orie Melvin's emails was unconstitutional. Id.

Without vacating the wrongful conviction and remanding for the necessary factual hearing, without affording Orie Melvin an opportunity to identify all of the improperly seized emails which were admitted against her at trial, without inviting briefing or argument on the issue of harmless error and without considering whether other evidence admitted against Orie Melvin derived

54

from the illegally seized emails, the Superior Court determined <u>sua</u> <u>sponte</u> that the constitutional violation was harmless because "the 10 emails seized pursuant to the warrant" were not prejudicial, the prejudice was <u>de</u> <u>minimis</u> or the emails were cumulative of "other properly admitted evidence." <u>Id.</u> at 21-22.

The determination that only 10 emails were seized is not accurate. Because the only issue at oral argument was whether <u>any</u> of the seized emails were introduced into evidence, the May 22, 2014 letter from Orie Melvin's counsel set forth only a "<u>partial</u> <u>list</u>" of the seized emails which were admitted into evidence at trial. (<u>See</u> May 22, 2014 letter.) Further, the Superior Court itself confirmed in its May 28, 2014 Order that the submission from counsel for Orie Melvin was "a <u>partial</u> <u>list</u>." (<u>See</u> May 28, 2014 Per Curiam Order.) (Emphasis added.) The statement in footnote 9 of the Superior Court's decision — that the "supplemental submission identif[ies] all emails obtained pursuant to the warrant at issue that were introduced into evidence at trial" — is contrary to Orie Melvin's May 22, 2014 submission and the Superior Court's own May 28, 2014 Order[14] and is therefore patently unreasonable. There can be no dispute that the District Attorney

_____

[14] The Assistant District Attorney confirmed that the offer to identify emails originated with Orie Melvin's counsel. (<u>See</u> Commw.'s Objection Pursuant to Pa. R.A.P. 2501 to the Manner of Appellant's Post Oral Argument Communication ¶ 2.)

seized thousands of Orie Melvin's personal emails and offered more than 10 of the seized emails into evidence at trial.  In addition to the email messages referenced by the Superior Court, the following Commonwealth exhibits consist of emails seized from Orie Melvin's personal account:  Ex. 14, Tabs 7, 39, 40, 42, 43; Ex. 28, Tab 15; Ex. 29, Tabs 19, 29; Ex. 34, Tab 15; Ex. 35, Tab 4; Ex. 42, Tab 3; Ex 44, Tabs 5, 7, 9.  (Copies of the emails are attached collectively as Exhibit "F.") The Superior Court failed to consider any of these exhibits or the likelihood that the Commonwealth used the illegally seized email messages to develop its case against Orie Melvin.

It is thus abundantly clear that Orie Melvin did not have a full and fair opportunity to challenge the evidentiary use of the illegally seized evidence. She was given neither notice nor an opportunity to address the issues of derivative use or harmless error in her briefs, at oral argument, in a post-argument submission or at an evidentiary hearing.  Moreover, the Superior Court never questioned or even considered whether the "other" evidence admitted against Orie Melvin derived from the illegally seized emails and should have been excluded as fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407. 416, 9 L. Ed. 2d 441 (1963).  There was never a suppression or

evidentiary hearing. In denying a new trial based on "other" purportedly cumulative evidence without an evidentiary hearing and without considering the source of the "other" evidence, the Superior Court improperly relieved the Commonwealth of its burden[15] of proving beyond a reasonable doubt that the "other" evidence was not tainted by the illegally seized emails. See Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 939, 17 L. Ed. 2d 705 (1967); see also Nardone v. United States, 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 S. Ct. 307 (1939) ("once [an illegal seizure] is established, the trial judge must give opportunity . . . to the accused to prove that a substantial portion of the case

_____

[15] The Commonwealth cannot satisfy this burden. Orie Melvin's personal email account containing thousands of emails was seized in January 2010 — at the very start of the District Attorney's investigation — and as a result served as the springboard for subsequent investigative activities. By focusing narrowly on the partial list of emails, the Superior Court failed to appreciate that the "other" evidence derived from the illegally seized emails. For example, the Superior Court cited Jamie Pavlot's testimony concerning "obtaining endorsements from influential political organizations" as "cumulative" of the seized emails, Melvin, 103 A.3d at 21, but failed to appreciate or even consider that this testimony (on page 253 of the trial transcript) (R. 3278a) was preceded by and premised on another email message illegally seized from Orie Melvin's email account (admitted as Commonwealth Exhibit 14, Tab 18, introduced at page 251 of the same transcript) (R. 3276a). This is the tip of the iceberg. Had Orie Melvin been afforded a suppression hearing as required by federal and state law, evidence cited by the Superior Court in support of its harmless error finding would have been subject to suppression.

against him was a fruit of the poisonous tree.").[16]  The Superior Court's decision is thus based on an unreasonable determination of the facts and an unreasonable and incorrect application of federal law.

The unusual combination of circumstances in this case — beginning with the trial court's failure to hold a suppression hearing based on an incorrect application and interpretation of a different judge's order in another case in which Orie Melvin had not opportunity to participate and culminating in the appellate court making a demonstrably inaccurate factual determination without the benefit of an evidentiary hearing and without affording Orie Melvin a full and fair opportunity to be heard on the issue — prevented Orie Melvin from presenting her Fourth Amendment challenge to the admission of the illegally seized emails.  This breakdown in the fact-finding process is an exception to the limitation on habeas

---

[16] The May 22, 2014 submission from Orie Melvin specifically addressed the false assertion by counsel for the Commonwealth that none of the seized emails were introduced into evidence.  Because the only issue at the time was whether any of the seized emails were introduced into evidence, the May 22, 2014 submission provided only a partial list to demonstrate that emails seized pursuant to the overbroad warrant were in fact admitted.  Many other email messages from Orie Melvin's email account were admitted as trial exhibits:  see, e.g., Ex. 14, Tabs 7, 39, 40, 42, 43; Ex. 28, Tab 15; Ex. 29, Tabs 19, 29; Ex. 34, Tab 15; Ex. 35, Tab 4; Ex. 42, Tab 3; Ex. 44, Tabs 5, 7, 9, and/or served as the derivative source for other evidence admitted at trial.

relief in Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d

1067 (1976), and requires full consideration by this Court under § 2254.  See, e.g.,

Boyd v. Mintz, 631 F.2d 247, 250-51 (3d Cir. 1980) (Stone does not apply where

"breakdown in the process" prevented petitioner from presenting his Fourth

Amendment claim); see also Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir.

1990) (failure to make explicit findings on matters essential to Fourth Amendment

issue and summary affirmance preclude application of Stone bar), cert. denied, 502

U.S. 898, 112 S. Ct. 1273, 116 L. Ed. 2d 225 (1991); Agee v. White, 809 F.2d

1487, 1490 (11th Cir. 1987) (Stone does not bar federal collateral review where

state appellate court failed to address petitioner's claim that evidence was

derivative of illegal arrest); Riley v. Gray, 674 F.2d 522, 527 (6th Cir. 1981)

(Stone poses no bar to federal review of state court decision where state appellate

court "frustrated the petitioner's opportunity to litigate his fourth amendment

claims because it failed to remand the case to the trial court" for evidentiary

hearing), cert. denied, 459 U.S. 948, 103 S. Ct. 266, 74 L. Ed. 2d 207 (1982);

Gamble v. State of Oklahoma, 583 F.2d 1161, 1165-66 (10th Cir. 1978) (federal

court not precluded from considering Fourth Amendment claim where state court

refused to apply correct and controlling constitutional standards).

For all of these reasons, Orie Melvin's conviction should be vacated under § 2254 and the case remanded to the state court with direction to schedule an evidentiary hearing to identify all evidence derived from the illegally seized emails.

D.      **The State Court Adjudication of the Prosecutorial Misconduct Issue Was Based on an Unreasonable Determination of the Facts and Was Contrary to Federal Law.**

The Assistant District Attorney knowingly introduced false evidence, tampered with evidence and suborned perjury from a key prosecution witness. Such egregious misconduct compelled a mistrial and dismissal of the criminal charges.

In order to appreciate the egregiousness of the misconduct, it is necessary to understand the context in which it occurred. The charges in this case relate to two distinct election campaigns: Orie Melvin's unsuccessful bid for the Supreme Court against now-Justice Max Baer in 2003 and her successful 2009 campaign for the same judicial office. Orie Melvin's primary accuser, Lisa Sasinoski, voluntarily left Orie Melvin's chambers shortly after the election in 2003 to take a position with newly-elect Justice Baer. Sasinoski claimed that she

was fired even though court personnel records show she had no break in service. (R. 6673a.)  Further, Sasinoski claimed that she did political work in Orie Melvin's judicial chambers in 2003, but there was no demonstrative evidence supporting her claim.  In an effort to fill this gap and bolster Sasinoski's already shaky credibility, the Assistant District Attorney knowingly offered evidence and testimony that falsely suggested that Orie Melvin directed Sasinoski to prepare responses to a political questionnaire.

Specifically, during direct examination on Friday, February 1, 2013, the Assistant District Attorney asked Sasinoski to identify a photocopy of a note written by Orie Melvin.  (R. 4205a.)  Sasinoski identified Orie Melvin's handwriting and, on this basis, a photocopy of the note was admitted into evidence as Exhibit 32, Tab 19 and published to the jury.  (Copies of the Commonwealth's Exhibit 32, Tab 19 (the hand-written note, R. 6399) and the actual document marked as Defendant's Exhibit H (the note with the attached "Women in the Profession" materials) are attached collectively as Exhibit "G.")

The Assistant District Attorney drew Sasinoski's attention to the top, left-hand corner of the note and referenced her name ("Lisa") written there.  He asked Sasinoski to read the entire note into the record and to confirm that the

61

handwriting was Orie Melvin's.  (R. 4206a.)  The Assistant District Attorney then

asked what "Questions 3, 8 and 10" referred to and Sasinoski responded "[i]t's a

questionnaire."  (R. 4206a.)  The Assistant District Attorney followed with a

leading question — "That would be an endorsement questionnaire of a special

interest group?" — and Ms. Sasinoski responded "Yes."  The colloquy is as

follows:

> Q.   What is the request?
>
> A.   Do you have proposed answers for Questions
>      3, 8 and 10?  Also any suggestions on remaining
>      questions that I can "chime" in on.  Can I have
>      this Monday.
>
> Q.   Who wrote that according to your recognition of the
>      handwriting?
>
> A.   From the Judge herself.
>
> Q.   What was it you were being asked to answer Questions
>      3, 8 and 10 on?
>
> A.   It's a questionnaire.
>
> Q.   <u>That would be an endorsement questionnaire of a</u>
>      <u>special interest group</u>?
>
> A.   Yes.

(R. 4206a.)  (Emphasis added.)  Having thus induced Sasinoski to identify the note

as relating to a political questionnaire, the Assistant District Attorney then moved

on to another subject area.

The premise in the Assistant District Attorney's question and Sasinoski's answer was patently false.  The handwritten note from Orie Melvin does not relate to a political questionnaire but rather to a roundtable discussion for women in the legal profession planned for the Pennsylvania Bar Association's ("PBA") annual meeting.  The Assistant District Attorney was aware that the handwritten note related to a professional, not a political, matter because the note was attached to the "Women in the Profession" materials.[17]  Nonetheless, he deliberately concealed the truth by removing the PBA materials and by posing a misleading question — "That would be an endorsement questionnaire of a special interest group?" — which elicited an affirmative, perjurious response from Sasinoski.  (R. 4206a.)

The Assistant District Attorney perpetuated the false impression that he had created by vigorously objecting to defense counsel's attempt to cross-examine Sasinoski concerning the PBA conference.  When defense counsel confronted Sasinoski with the "Women in the Profession" materials attached to

---

[17] The Assistant District Attorney personally investigated and prosecuted this case for more than three years and was intimately familiar with the issues and the evidence.  Further, the District Attorney's Office maintained exclusive possession, custody and control over the note and attachments since Sasinoski delivered them to the District Attorney after receiving a subpoena from the defense.

Orie Melvin's handwritten note, Sasinoski denied that the note was attached to the

materials and the prosecutor foreclosed further questioning by objecting and

declaring in the presence of the jury that he had never before seen the handwritten

note attached to the "Women in the Profession" materials.  The entire colloquy is

as follows:

> Q.     You answered that this was a document that
> was attached to the cover of a questionnaire
> endorsement from a special interest group,
> right?
>
> A.     Yes.
>
> Q.     Your box of materials actually has the
> document that was attached to this
> document.  Are you aware of that?
>
> A.     No.
>
> Q.     Did you get a chance to review that in
> advance of today's proceeding?
>
> A.     What document?
>
> Q.     The document to which Tab 19 is attached.
> It's not in your materials because this is all I
> received.  But I'm going to ask you to
> review a document.  Take whatever time
> you need to review all of that.  It's been
> marked Defendant's Exhibit H.  And let me
> know after you have had a full opportunity
> to review it.
>
> THE COURT:     Do I get to see it?
>
> MR. CASEY:     Yes, Judge.

64

THE WITNESS:    This is a document that has 11 questions on it, but I don't know that this cover sheet is for this.

BY MR. CASEY:

Q.    Well, this came from your box, and I'm asking you to take a look at it and let me know if—

A.    No, the letter came from my box.

Q.    I'm posing the question, and you can answer the question after I pose it.

A.    Sure.

Q.    There is a document attached to the cover letter, and I'm asking you to review that document and tell me whether that document was in the box that you turned over to the District Attorney's Office and whether that cover sheet was on top of that document?

MR. CLAUS:    Objection, Your Honor. She said she can't identify it. Certainly, we will look in the box and see if that's accurate. But I have to admit, this is the first time that I've seen this attached to this. So I would have to say that her lack of recognition has to preclude any questioning on this until she either identifies it —

THE WITNESS:    This is the first time I've seen it also.

MR. CASEY:    I'm just inquiring of the witness whether or not —

THE COURT:    She said she hasn't seen it.

THE WITNESS:    I'll say that again, I haven't seen it.

MR. CASEY:    Mr. Claus, if you would look for this document?

65

MR. CLAUS:       Absolutely.

(R. 4226a-4228a.)

After the jury was dismissed for the day, and while Sasinoski was still on the stand, the prosecutor retrieved Sasinoski's materials from the District Attorney's office and, at the request of counsel for Orie Melvin, located in those materials the original handwritten note that was marked and introduced as Commonwealth Exhibit 32, Tab 19.  The original handwritten note which had been in the exclusive possession of the District Attorney since it was produced by Sasinoski was stapled to the "Women in the Profession" materials in exactly the same form presented by defense counsel to Sasinoski prior to the Assistant District Attorney objecting and asserting in front of the jury that he had never before seen the handwritten note attached to the "Women in the Profession" materials.

Prior to resuming testimony on Monday, February 4, 2013, Orie Melvin filed a written motion to dismiss the criminal charges due to prosecutorial misconduct.  (R. 7671a.)  The trial court heard oral argument on the motion on the morning of February 4, 2013.  Without conducting an evidentiary hearing or even asking for an explanation from the Assistant District Attorney, the trial court

summarily concluded that the false exhibit was "a mistake."[18]  (R. 4262a.)  The

trial court denied the defense motion to dismiss with prejudice based on

prosecutorial misconduct and ruled that a curative instruction would be given to

the jury.  (R. 4279-80a.)  The curative instruction did not and could not eliminate

the substantial prejudice to Orie Melvin.[19]

---

[18]  After the trial court ruled, the Assistant District Attorney acknowledged that the handwritten note was appended to the "Women in the Profession" materials and suggested that the materials were excised during the copying process.  (R. 4263 - 64a.)  He further offered that he objected to defense counsel's questioning of Ms. Sasinoski because the "Women in the Profession" materials did not appear in the exhibit binder that he prepared.  (R. 4265a.)

[19]  The trial court proposed that he would question Sasinoski about the attachment to the handwritten note in an effort to elicit from her an admission that her prior testimony — that the note related to a political questionnaire — was inaccurate. (R. 4273-74a.)  The flaw in this approach is that Sasinoski refused to concede that Orie Melvin's handwritten note related to the "Women in the Profession" materials rather than a political questionnaire.  Instead, Sasinoski insisted that the handwritten note "was the only thing that I think I had," (R. 4278a), that she was "not sure" that it was inaccurate to refer to the attachment as a questionnaire from a political interest group, (R. 4278a), and, when asked whether the attachment related to the "Women in the Profession" roundtable rather than the campaign, she responded: "I don't have a recollection of that."  (R. 4279-80a.)  Then, the trial court purported to lay the blame on the defense by suggesting that the defense was at all times aware of the identity of the actual attachment and that there was a legitimate dispute among the parties as to how the attachment was appended to the handwritten note (i.e., by paperclip or staple).  (R. 4279-80a.)  Rather than declare to the jury that the evidence offered by the Assistant District Attorney was false, the trial court ended his curative instruction by saying:  "For whatever that means to you, take that."  (R. 4280a.)  Sasinoski continued to deny any recollection as to whether the handwritten note related to the "Women in the Profession" event and whether the materials came out of the box that she delivered to the District

The prosecutor's knowing presentation of false evidence impugned the integrity of the judicial process and should not have been blindly excused as a "mistake."  When the note was photocopied for use as a trial exhibit, the presence of the paper clip — clearly visible in the photocopy — confirmed the existence of an attachment.  Further, when the original note was brought into the courtroom in the middle of Sasinoski's testimony, the "Women in the Profession" materials were attached to the hand-written note by a staple.  Rather than suggesting a copying mistake, the presence of the staple appending the original handwritten note to the "Women in the Profession" materials proved that the Assistant District Attorney knew the Orie Melvin note related to the professional materials rather than a political questionnaire after the note was copied for use as a trial exhibit. Moreover, the Assistant District Attorney reviewed the handwritten note with Sasinoski while preparing her testimony but did not show her the "Women in the Profession" materials which were stapled to the original handwritten note.  The only possible explanation is that the Assistant District Attorney deliberately removed the "Women in the Profession" materials and orchestrated the questioning of Sasinoski to create the false impression that the hand-written note related to a prohibited political questionnaire.  This knowing introduction of false

_____

Attorney's Office.  (See, e.g. R. 4291-94a.)

evidence and subornation of perjury intentionally subverted the judicial process and deprived Orie Melvin of a fair trial in violation of the Fifth Amendment. <u>See generally</u>, <u>Berger v. United States</u>, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 2d 1314 (1935) (prosecutor "is not at liberty to strike foul [blows]" but rather is duty bound to ensure "that justice shall be done").

This is not the only instance in which the Commonwealth offered false evidence. During the direct examination of another key prosecution witness, Jamie Pavlot, the Assistant District Attorney marked and moved into evidence as Commonwealth Exhibit 15, (R. 5906a), a "red accordion file" containing documents that Pavlot allegedly removed from Jane Orie's office in 2009. When Pavlot admitted on cross-examination that the accordion file contained documents created in 2010, the Assistant District Attorney conceded that the 2010 materials were not in the file that Pavlot removed from Jane Orie's office but rather were inserted later by the Commonwealth. (R. 3555-62a.) From the "red accordion file," the Assistant District Attorney highlighted an email message dated October 22, 2009 relating to a fine that had been levied as a result of improper placement of a yard sign. (R. 3314-22a.) The Assistant District Attorney elicited testimony from Pavlot that she paid the fine and that the payment was evidenced by an

express mail receipt for $15.20.  (R. 3320-22a.)  In fact, the receipt was dated October 21, 2009 — one day before the email was sent — and identified the recipient of the express mail package as the "Senate Republican Campaign Committee," (R. 3470a), and therefore the receipt had nothing to do with the fine.

This pattern of foul blows deprived Orie Melvin of a fair trial.  It is well settled that prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).  In considering prosecutorial misconduct claims, reviewing courts must examine the prosecutor's offensive actions in the context of the entire trial.  Id. at 639.  However, there are "some occurrences at trial [that] may be too clearly prejudicial for . . .  a curative instruction to mitigate their effect."  Id. at 644.  This case presents such an extreme occurrence.

The prosecutor's deliberate, bad faith conduct in offering knowingly false evidence severely prejudiced Orie Melvin and deprived her of a fair trial.  The Superior Court's finding that "the prejudice to Orie Melvin was minimal," Melvin, 103 A.3d at 27, is an unreasonable determination of the facts in light of the evidence presented.

The Superior Court's analysis is flawed in two critical respects.  First,
the Superior Court only addressed the prosecutor's misrepresentation of the note
appended to the "Women in the Profession" materials and completely ignored the
other two instances of prosecutorial misconduct addressed by Orie Melvin in her
Superior Court Brief.  Specifically, the Superior Court failed to consider the
prosecutor's misconduct in inserting documents created in 2010 into the red
accordion file that was allegedly removed by Pavlot in 2009 or the prosecutor's
misrepresentation of the purpose for the October 21, 2009 express mail delivery.
In considering prosecutorial misconduct claims, reviewing courts must examine
the prosecutor's offensive actions in context and in light of the entire trial.
Donnelly, 416 U.S. at 639.  In ignoring two out of three alleged instances of
egregious prosecutorial misconduct, the Superior Court failed to properly consider
or apply this federal precedent.

Second, the Superior Court's determination that "the prejudice to Orie
Melvin was minimal" is based on a misunderstanding concerning the significance
of this unique piece of evidence.  Out of the 90 CDs and 100 million pages of
documents produced in discovery in this case (R. 1330a), this was the only
evidence in Orie Melvin's handwriting directing an employee to do anything.  The

71

prejudice resulting from the prosecutor's misrepresentation cannot reasonably or fairly be characterized as minimal.

Further, the Superior Court's determination that "the trial court took appropriate steps to reduce any prejudice to Orie Melvin" was an unreasonable determination of the facts. Melvin, 103 A.3d at 25-28. As noted above, the Supreme Court has held that there are "some occurrences at trial [that] may be too clearly prejudicial for . . . a curative instruction to mitigate their effect." Donnelly, 416 U.S. at 644. This is one of those occurrences. As noted above, the trial court (1) cast blame upon defense counsel for the prosecution's knowing introduction of false testimony; (2) made excuses for the prosecution (3) failed to inform the jury that the evidence offered by the Assistant District Attorney was false; and (4) ended the currative instruction by stating: "For whatever that means to you, take that." Thus, this "curative" instruction exacerbated rather than eliminated the prejudice to Orie Melvin. In fact, no instruction could have ameliorated the effects of the prosecutor's actions.

In sum, the Superior Court's adjudication of the prosecutorial misconduct issue was based on an unreasonable determination of the facts in light of the evidence presented and was contrary to established federal law.

Accordingly, habeas relief is warranted.

### E.   The Letters of Apology Required as a Condition of Sentence Violate the Fifth Amendment.

The trial court ordered a sentence of home confinement and probation with the requirement, <u>inter alia</u>, that Orie Melvin write letters of apology to her former staff and all of the judges in the Commonwealth of Pennsylvania. Specifically, the trial court Ordered as follows:

> THE COURT:   In addition, you will also write letters
> of apology to everybody on your staff that you
> made do illegal work.

(R. 7780a.)  The trial court further orally directed that Orie Melvin pose in handcuffs for a photograph to be sent to all judges in Pennsylvania together with the apology.  The direction was as follows:

> THE COURT:   . . . I'm going to have a picture of you taken, and
> I'm going to have copies of that picture made in
> the amount of the Judges of the Commonwealth of
> Pennsylvania.  And you are going to apologize on
> each one of these pictures, and they are going
> to be sent o each Judge in Pennsylvania. That will
> be part of the cost of prosecution.
>                        . . .
> THE COURT:   Where is the photographer?

73

COUNTY
PHOTOGRAPHER:     I'm here.

THE COURT:     All right.  The photographer, one of the deputy
sheriffs, and Joan Orie Melvin and her attorney
will retire into that room.  Anything else?  This
matter is complete.

MR. CLAUS:     Nothing, Your Honor.

THE COURT:     Court is adjourned.  Jane, come on in.

*(The following in-chambers discussion was held on the record.)*

THE COURT:     This is the picture.  Put handcuffs on her.

*(Whereupon, the deputy sheriff places handcuffs on Defendant Orie Melvin.)*

THE COURT:     This is the picture I want.  This is the picture that
goes to the rest of the Judiciary.  Law Claus will
tell you how many copies he needs.  Take this
picture.

*(Whereupon the County Photographer takes a picture.)*

THE COURT:     Okay.  Take them off.

(R. 7781-84a.)  The photograph taken by the county photographer under the

control of the trial judge was leaked to the press and published that same day.[20]

---

[20] See Adam Brandolph, <u>Former Justice Melvin Sentenced to 3 Years of House Arrest, 2 Years of Probation</u>, TRIBLIVE (May 7, 2013, 11:34 a.m.), http://triblive.com/news/adminpage/3946628-74/melvin-court-orie#axzz3m0iszHWt; Paula Reed, <u>Orie Melvin, Sister Guilty of Corruption, Put on House Arrest</u>, PITTSBURGH POST-GAZETTE (May 7, 2013, 11:45 p.m.),

74

The apology directive was an unconstitutional and unlawful component of a criminal sentence and therefore this condition of Orie Melvin's judgment and sentence must be vacated.[21]

The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Superior Court observed in granting Orie Melvin's request for a stay of the apology directive pending disposition of this appeal that the privilege against self incrimination must be construed liberally:

> The privilege against self-incrimination is "accorded liberal construction in favor of the right it was intended to secure," and may be claimed when a witness "has reasonable cause to apprehend danger from a direct answer." Hoffman v. United States, 341 U.S. 479, 486 (1951).  In Commonwealth v. Carrera, 424 Pa. 551, 227 A.2d 627 (1967), abrogated in part by statute on other grounds, Commonwealth v. Swinehart, 541 Pa. 500, 514, 664 A.2d 957, 964 (1995), our Supreme Court explained as follows:
>
> It is always for the court to judge if the

---

http://www.post-gazette.com/news/state/2013/05/07/Orie-Melvin-sister-guilty-of-corruption-put-on-house-arrest/stories/201305070235.

[21] Orie Melvin challenged the unconstitutional apology requirement at the re-sentencing hearing on May 14, 2013.  (R. 7795-99a.)

> silence is justified, and an illusory claim
> should be rejected. However, for the court
> to properly overrule the claim of privilege, it
> must be [p]erfectly clear from a careful
> consideration of all the circumstances, that
> the witness is mistaken in the apprehension
> of self-incrimination and the answers
> demanded [c]annot possibly have such
> tendency.

Commonwealth v. Melvin, 79 A.3d 1195, 1200-01 (Pa. Super. 2013).

The Pennsylvania Superior Court, however, issued a decision that is contrary to clearly established federal law as determined by the United States Supreme Court. The Superior Court concluded that since Orie Melvin's "right against self-incrimination [does not] extend[] beyond the pendency of a direct appeal" Orie Melvin "is not entitled to relief from the apology letters requirement on constitutional grounds after her direct appeal has been decided." Melvin, 103 A.3d at 51.

The issue is not whether Orie Melvin possessed the Fifth Amendment right to not be a witness against herself after the direct appeal. The question is whether she possessed the right at sentencing. Orie Melvin was required by the trial court at sentencing to admit criminal culpability and "write letters of apology

to everybody on your staff that <u>you</u> <u>made</u> <u>do</u> <u>illegal</u> <u>work</u>." (R. 7780a.) (Emphasis added.)[22]  Clearly, a mandated apology is a violation of Orie Melvin's Fifth Amendment right to not be a witness against herself at sentencing. The Supreme Court decided this question long ago: "Any effort by the State to compel [the defendant] to testify against [her] will at the sentencing hearing clearly would contravene the Fifth Amendment." <u>Estelle v. Smith</u>, 451 U.S. 454, 463, 101 S. Ct. 1866, 68 L. Ed. 2d 259 (1981). The Supreme Court determined that, "[u]nlike a

---

[22] The trial court repeatedly attempted to enforce its unconstitutional sentencing condition even when the case was on direct appeal and while the trial court clearly did not possess jurisdiction. The trial court held a sentencing violation hearing (pursuant to <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 93 S. Ct. 1756 36 L. Ed. 2d 656 (1973)) on October 15, 2013 at which the trial court deemed that there was probable cause to schedule a <u>Gagnon II</u> hearing for December 4, 2013. (R. 7900-01a). The trial court's illegal action was properly enjoined by the Superior Court on November 6, 2013. <u>Commonwealth v. Orie Melvin</u>, 79 A.3d 1195, 1205 (2013). It was not until the decision of the Superior Court on the merits – September 21, 2014 – that the trial court re-assumed jurisdiction and threatened incarceration for not fulfilling its unconstitutional sentencing Order. The trial court dictated the content of the letter requiring an admission of responsibility plainly violative of the Fifth Amendment right not to be a witness against oneself. Ultimately, Orie Melvin was coerced on or about January 28, 2015 to write the following under the threat of incarceration:  "Please allow me to apologize for my conduct.  I fully acknowledge any harm caused by my crimes and accept responsibility for my conduct.  As a former member of the Pennsylvania Judiciary, I realize that my conduct has impacted the public's perception toward the judiciary and the difficulty it has imposed upon the discharge of your responsibilities as a judge.  I accept the responsibility for the crimes for which I have been convicted. I regret the harm my conduct caused you." (A true and correct copy of the apology letter is attached hereto as Exhibit "H.")

77

prison disciplinary proceeding, a sentencing hearing is part of the criminal case –
the explicit concern of the self-incrimination privilege.  In accordance with the
Fifth Amendment, we must accord the privilege the same protection in the
sentencing phase of 'any criminal case' as that which is due in the trial phase of the
same case." Mitchell v. United States, 526 U.S. 314, 328-29, 119 S. Ct. 1307, 143
L. Ed. 2d 424 (1999).  The Court concluded that the "concerns which mandate the
rule against negative inferences at a criminal trial apply with equal force at
sentencing." Id. at 329  (emphasis added).  The trial court's insistence at
sentencing that Orie Melvin write letters apologizing for the crime is a direct
violation of her fundamental right not to be a witness against herself.

Counsel for Orie Melvin at the second sentencing hearing on May 14,
2015 asserted her  Fifth Amendment right: "Judge, as to the – I would ask the
Court's consideration with the issue of the apologies [sic] letter, and ask – the
consideration I ask of the Court is to either consider rescinding that requirement or
staying it because of the Fifth Amendment to the United States Constitution, right
not to incriminate oneself."  (R. 7795-96a.)  The trial court responded that it was
"not asking her to incriminate herself." (R. 7796a.)  Orie Melvin's counsel
explained that "the coercion to write the letter is what invokes the Fifth

Amendment, and that letter would be incriminating, and she is not yet on direct appeal and the Fifth Amendment would stay with her until the conclusion of final judgment." (Id.) The trial court inquired, "What other cases do you have?" to which Orie Melvin responded, "Judge Mitchell versus the United States, which is to the United States Supreme Court, 526 US 314, 1999. . . ." (R. 7798a.) Orie Melvin offered that "the Supreme Court said that the Fifth Amendment stays with the defendant right through to conclusion of judgment in the case. And so an individual has a right not to incriminate one's self until the final judgment in the case. And that is the law of the land. And Mitchell is the lead case." (R. 7799a.)

Orie Melvin was sentenced to three years of home confinement conditioned upon her apology for the commission of the offenses for which she asserted her innocence. If Orie Melvin did not write the apology letters admitting the offense, the trial court would have incarcerated her.[23] Just as the Fifth Amendment prevents a criminal defendant from being made the deluded instrument of her own conviction, it protects her as well from being made the instrument of her own incarceration. Estelle, 451 U.S. at 462.

It is the Government's burden to prove facts relevant to the crime at

_____

[23] See supra n. 21.

the sentencing phase and it "cannot enlist the defendant in this process at the expense of the self-incrimination privilege." <u>Mitchell</u>, 526 U.S. at 330. Ours is "an accusatorial and not an inquisitorial system." <u>Rogers v. Richmond</u>, 365 U.S. 534, 541, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1960). Placing the burden on the defendant to admit the offenses at sentencing turns our system of justice on its head.

The trial court's unconstitutional action of insisting that Orie Melvin relinquish her assertion of innocence and coercing an admission from her at the sentencing hearing "imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." <u>Mitchell</u>, 526 U.S. at 330. The conviction should be reversed and remanded for further proceedings consistent with the United States Constitution.

# CONCLUSION

For the reasons stated above, Orie Melvin's conviction should be vacated under § 2254.

Respectfully submitted,

_____
Patrick A. Casey
PA ID No. 50626
pcasey@mbklaw.com
Donna A. Walsh (*pro hac vice forthcoming*)
PA ID No. 74833
Suzanne P. Conaboy (*pro hac vice forthcoming*)
PA ID No. 314036
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: September 18, 2015