# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOAN ORIE MELVIN, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | NO. 15-1225 |
| | : | |
| STEPHEN D. ZAPPALA, | : | SECTION 2254 PETITION |
| DISTRICT ATTORNEY OF | : | |
| ALLEGHENY COUNTY, and | : | JUDGE MARK R. HORNAK |
| FRANK J. SCHERER, | : | |
| DIRECTOR, ALLEGHENY | : | |
| COUNTY PROBATION, | : | ELECTRONICALLY FILED |
| | : | |
| Respondents. | : | |

---

## PETITIONER JOAN ORIE MELVIN'S REPLY BRIEF IN FURTHER SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

---

Patrick A. Casey
Donna A. Walsh
Suzanne P. Conaboy
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Prosecuting Orie Melvin for Transgressing a Work Rule
          Fundamentally Violates Due Process . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Orie Melvin Was Denied Access to Electronic Evidence
          in Violation of the Fifth and Sixth Amendments and the
          Evidence Was Not Searched for Exculpatory Materials
          Contrary to Brady . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    The District Attorney's Seizure of Emails From Orie
          Melvin's Personal Email Account and Use of Those
          Emails at Trial and to Prepare the Case for Trial Violated
          the Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    The State Court Adjudication of the Prosecutorial
          Misconduct Issue Is Based on an Unreasonable
          Determination of the Facts and Is Contrary to Federal
          Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    E.    The Letters of Apology Required as a Condition of
          Sentence Violate the Fifth Amendment . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

Arizona v. Fulminante, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Banks v. Dretke, 540 U.S. 667, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004) . . . 11

Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) . . . . . . . 25

Berger v. United States, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935) . . . . 19

Bouie v. City of Columbia, 84 S. Ct. 1697, 378 U.S. 347, 12 L. Ed. 2d 894 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13, 14

Briston v. Wholey, 307 Fed. App'x. 616 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . 19

Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) . . . 14

Chavez v. Martinez, 538 U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) . 27

Commonwealth v. Martorano, 559 Pa. 533, 741 A.2d 1221 (1999) . . . . . . . . . . 19

Commonwealth v. Matty, 422 Pa. Super. 595, 619 A.2d 1383 (1993) . . . . . . . . . 8

Commonwealth v. Melvin, 103 A.3d 1 (Pa. Super. 2014) . . . . . 2, 5, 14, 16, 25, 27

Commonwealth v. Orie Melvin, 79 A.3d 1195 (Pa. Super. 2013) . . . . . . . . . 25, 26

Connally v. General Constr. Co., 269 U.S. 385, 46 S. Ct. 126, 70 L. Ed. 2d 322 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Culombe v. Connecticut, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037

(1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) . . . . 9, 13

Daye v. Attorney General of New York, 696 F.2d 186 (2d Cir. 1982) . . . . . . . . 19

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431
    (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 21

Dowling v. United States, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708
    (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Estelle v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) . . 24, 27

Evans v. Court of Common Pleas, 959 F.2d 1227 (3d Cir. 1992) . . . . . . . . . . . 19

Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222
    (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) . . . 1

Hoffman v. United States, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951) . 27

Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) . . . . 1

Judges of the Court of Common Pleas of the Twenty-Seventh Judicial Dist. v.
    County of Washington, 120 Pa. Commw. 283, 548 A.2d 1306 (1988) . . . . 4

Kolender v. Lawson, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) . . . 6

Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)  10, 11

Lam v. Kelchner, 304 F.3d 256 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Marks v. United States, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) . . . 5

Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 17

McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 18

Miller v. Pate, 386 U.S. 1, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967) . . . . . . . . . . . 18

Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) . . . . 25

Mitchell v. United States, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424
        (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678
        (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Nardone v. United States, 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939) . . 14

Rabe v. Washington, 405 U.S. 313, 92 S. Ct. 993, 31 L. Ed. 2d 258 (1972) . . . . . 5

Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) . . . . . 17

United States v. George, 228 U.S. 14, 33 S. Ct. 412, 57 L. Ed. 2d 712 (1913) . . . 6

United States v. Kozminski, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788
        (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S. Ct. 298, 65 L. Ed. 2d
        516 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Standard Brewery, 251 U.S. 210, 40 S. Ct. 139, 64 L. Ed. 2d 229
        (1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) . . . 7

Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441
        (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 18, 28

28 U.S.C. § 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 Pa. C.S.A. § 3926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa. C.S.A. § 4111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

E. Griswold, The Fifth Amendment Today 7 (1955) . . . . . . . . . . . . . . . . . . . . . . 24

## INTRODUCTION

Habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems." Harrington v. Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). This unprecedented prosecution of former Pennsylvania Supreme Court Justice Joan Orie Melvin for allegedly violating an internal workplace rule involved several extreme malfunctions of the criminal justice system. The District Attorney's response to Orie Melvin's petition is stunning for its failure to pointedly address the egregious federal constitutional violations outlined by Orie Melvin. Instead, the District Attorney hides behind the deferential standard of review for habeas petitions and repeats the irrelevant arguments in his state court filings. Proper application of 28 U.S.C. § 2254 to the flagrant constitutional violations in this case leaves no doubt that the state court adjudication of Orie Melvin's federal claims is contrary to established federal law and objectively unreasonable and, therefore, Orie Melvin is entitled to habeas relief.

### A.    Prosecuting Orie Melvin for Transgressing a Work Rule Fundamentally Violates Due Process.

A criminal statute must clearly define the conduct it proscribes. <u>See</u> <u>Connally v. General Constr. Co.</u>, 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 2d 322 (1926).  The charges in this case — theft of services, 18 Pa. C.S.A. § 3926, and misapplication of entrusted property, 18 Pa. C.S.A. § 4111 — do not in any way provide notice that transgressing a workplace rule may be prosecuted as a crime.  The charges against Orie Melvin are improperly premised on violation of a workplace rule and, as a result, violate due process.

Unable to point to anything in the charged offenses that put Orie Melvin on notice that a violation of the Pennsylvania Supreme Court's Guidelines Regarding Political Activity by Court-Appointed Employees ("the Guidelines") may result in criminal prosecution, the Commonwealth attempts to evade the fair notice requirement altogether by claiming that Orie Melvin was not prosecuted for violating this workplace rule.  (Commw. Br. at 44-45.)  This argument is belied by virtually every aspect of the record.  Contrary to the Commonwealth's assertion and the factually unsupported and otherwise unreasonable conclusion reached by the Superior Court, <u>Commonwealth v. Melvin</u>, 103 A.3d 1, 15-16 (Pa. Super.

2014), the criminal charges against Orie Melvin were <u>overtly</u> <u>based</u> on the prohibition against political activity in the Guidelines.  The Commonwealth referenced the Guidelines in the Information (R. 1023a), admitted in court filings that the theft of services, negligent entrustment and official oppression charges are premised on the Guidelines, (<u>see</u> Commw. Br. in Response to Def.'s Omnibus Pretrial Mot. at 8 (theft of service charges in Counts 1, 2 and 4 are based on assertion that Guidelines "prohibit[] politicking by court personnel — even on their 'own time'"); <u>see also</u> Commw. Br. filed in Superior Court at 24-25), questioned each judicial employee witness at trial about the prohibition in the Guidelines (R. 4110-11a, 4215-17a, 4430-33a, 4540a-43a, 4586-88a, 4651-53a, 5492a), introduced court personnel records relating to the Guidelines as trial exhibits (Ex. 35, Tab 3 (R. 6412); Ex. 34, Tab 4 (R. 6406a); Ex. 32, Tab 27 (R. 6400a); Ex. 38 (R. 6418a); Ex. 40, Tab 2 (R. 6424a)), and expressly invoked the Guidelines in closing argument (R. 5784-85a, 5794a).  In fact, the prosecutor argued to the jury during closing argument that the Guidelines supplied "notice" to Orie Melvin and other judges that the charged conduct was unlawful:

> [T]he rule tells them they are not supposed to be doing political work, even outside the office.  Here, all of these court employees should have been on notice that that was not permitted.

3

(See R. 5794a (Assistant District Attorney's Closing Argument).)

Reliance on the Guidelines was necessary to the District Attorney's theory of prosecution because employees supervised by Pennsylvania appellate judges like Orie Melvin <u>were not required to devote any particular number of hours to their judicial work</u>.  (R. 4720-21a.)  Judicial employees did not fill out time sheets or keep time records.  (R. 4752-53a.)  They did not need to work a particular number of hours to receive their full salary and instead each appellate judge retained complete, unfettered discretion to set work schedules for employees working in chambers.  Since there were no time requirements, an appellate judge could direct that judicial employees receive their full salary even if they did not report to work.[1]  (R. 4720-21a; R. 4754a.)  Absent any minimum hour requirement, there can be no theft, diversion or misapplication of government property.  To supply the missing link necessary for criminal prosecution — some deviation from expected conduct — the District Attorney needed to be able to point to a prohibition or restriction on judicial employees that was allegedly

---

[1] The Pennsylvania Commonwealth Court confirmed that judicial staff are entitled to their full pay even when they are excused from work by the judge to whom they report. <u>Judges of the Court of Common Pleas of the Twenty-Seventh Judicial Dist. v. County of Washington</u>, 120 Pa. Commw. 283, 290, 548 A.2d 1306, 1309 (1988).

4

breached.  For this, the District Attorney turned to the Guidelines.[2]

The Guidelines thus admittedly and by design formed the basis of the criminal charges in this case and, according to the Assistant District Attorney in his closing argument, served as "scienter" and "notice" to Orie Melvin and others that political activity may lead to criminal prosecution and punishment.  (R. 5780-81a; R. 5794a.)  Such resort to extraneous matters to define an offense plainly violates due process.  The Superior Court failed to consider or appreciate the due process fair notice requirement or the District Attorney's unconstitutional reliance on the Guidelines to supply the standard for criminal liability.  In fact, the Superior Court relegated its entire discussion of the issue to a single sentence in an footnote.  Melvin, 103 A.3d at 16 n.4.  Its decision is patently wrong and contrary to and based on misapplication of long-standing United States Supreme Court precedent which demands that a criminal statute must clearly define the conduct it proscribes, see, e.g., Marks v. United States, 430 U.S. 188, 191, 97 S. Ct. 990, 992-93, 51 L. Ed. 2d 260 (1977); Rabe v. Washington, 405 U.S. 313, 316, 92 S.

_____

[2]  The Guidelines prohibit judicial employees from engaging in "partisan political activity" and provide several examples of "political activity" but do not specifically or completely define the term.  (R. 1499a.)  ("The term 'partisan political activity' shall include, but is not limited to, . . . .")  As a result, there is no clear delineation as to what constitutes "political activity" or how much "political activity" equates with commission of a crime.  To criminalize "political activity" as the District Attorney purported to do in this case thus enables arbitrary prosecution which is contrary to the Fifth and Fourteenth Amendments.

Ct. 993, 994, 31 L. Ed. 2d 258 (1972); <u>Bouie v. City of Columbia</u>, 84 S. Ct. 1697,

1702, 378 U.S. 347, 352, 12 L. Ed. 2d 894 (1964); <u>Connally</u>, 46 S. Ct. at 127, 269

U.S. at 391; <u>United States v. Standard Brewery</u>, 251 U.S. 210, 220, 40 S. Ct. 139,

141, 64 L. Ed. 2d 229 (1920); <u>United States v. George</u>, 228 U.S. 14, 22, 33 S. Ct.

412, 415, 57 L. Ed. 712 (1913), and provide an ascertainable standard of guilt, <u>see</u>,

<u>e.g.</u> <u>United States v. Kozminski</u>, 487 U.S. 931, 949, 108 S. Ct. 2751, 2763, 101 L.

Ed. 2d 788 (1988); <u>Kolender v. Lawson</u>, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858,

75 L. Ed. 2d 903 (1983); <u>United States v. L. Cohen Grocery Co.</u>, 255 U.S. 81, 89,

41 S. Ct. 298, 300, 65 L. Ed. 2d 516 (1921).

The District Attorney does not address this federal authority in his

brief, but rather argues that Orie Melvin's Petition should be subject to "narrow

review" under a "fundamental fairness" analysis. (Commw. Br. at 42.)  This is not

a correct statement of the law.  The issue in this case is fair notice and therefore

the different analysis applied to due process challenges based on "fundamental

fairness" is not relevant.[3]  The Commonwealth also errs in positing that this Court

---

[3]  The District Attorney cites <u>Dowling</u> and <u>Donnelly</u> as justification for the proposed
"narrow review," (Commw. Br. at 42), but neither case involving an alleged violation of the fair
notice requirement.  The issue in <u>Dowling</u> (which did not involve a habeas petition) was whether
the introduction of evidence relating to a crime for which the defendant had been acquitted
violates double jeopardy and the due process guarantee of "fundamental fairness."  <u>Dowling v.</u>
<u>United States</u>, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  The issue in <u>Donnelly</u>
was whether the prosecutor failed to observe the fundamental fairness essential to the concept of

"must apply the presumption of correctness regarding factual and legal conclusions reached by the state courts." (Id. at 58.) Section 2254 does not require a federal court "to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams v. Taylor, 529 U.S. 362, 389, 120 S. Ct. 1495, 1511, 146 L. Ed. 2d 389 (2000). Thus, this Court need not and must not defer to and accept the Superior Court's objectively unreasonable conclusion which ignores the District Attorney's express reliance on the Guidelines to supply the required notice or, as the Assistant District Attorney stated in his closing argument, "scienter,"[4] and the

---

justice when he remarked to the jury that the defendant and his counsel hoped for a conviction on a lesser offense. Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). The "fundamental fairness" test applied in Dowling and Donnelly has no application to the issue of whether a criminal statute provides fair notice of prohibited conduct. Nor does the due process challenge in this case — a challenge to the validity of the charges based on lack of fair notice that the alleged conduct constitutes a crime — involve or depend on a review of the evidence. Grayned v. City of Rockford, 408 U.S. 104, 106 n.1, 92 S. Ct. 2294, 2297, 33 L. Ed. 2d 222 (1972) ("Since appellant's sole claim in this appeal is that he was convicted under facially unconstitutional ordinances, there is no occasion for us to evaluate . . . the sufficiency of evidence . . . ."). Accordingly, the District Attorney's self-serving recitation of the evidence on pages 45-79 of his brief is irrelevant and requires no reply.

[4] The Assistant District Attorney argued to the jury in closing as follows:

> But in each of these cases against each of the two respective
> defendants there is language that talks about what we in the law
> call scienter, or guilty knowledge, whether or not the defendant

obvious lack of minimal standards to guide law enforcement.

Simply stated, basing criminal charges on a prohibition in an internal work rule violates the due process requirements that criminal statutes must provide actual notice of the conduct that is prohibited and must provide sufficiently specific guidelines to govern law enforcement.  Since there is nothing in the criminal statutes charged in this case that put Orie Melvin or other Pennsylvania judges on notice that a violation of the Guidelines would expose them to criminal prosecution and there are no parameters in the charged offenses to guide law enforcement in properly determining which workplace rule violations warrant criminal punishment, the criminal charges against Orie Melvin are plainly

---

knew what they were doing was wrong. . . .

First of all, you saw the Policy Manual of the Court.  Nowhere in that Policy Manual does it permit political work to be done for a Judge who is aspiring a higher office.  It's just not there.  It is not there. . . . . [Y]ou can't do it inside the office.  And that's what we are here for.  That's what this case is all about.

(R. 5780-81a; <u>see also</u> Assistant District Attorney's Closing Argument at R. 5794a ("[T]he rule tells them they are not supposed to be doing political work, even outside the office.  Here, all of these court employees should have been on notice that that was not permitted.").)  The District Attorney's express reliance on the Guidelines as the basis for criminal liability distinguishes this case from <u>Commonwealth v. Matty</u>, 422 Pa. Super. 595, 619 A.2d 1383 (1993), where no work rule was at issue.  Moreover, since <u>Matty</u> did not involve a member of the Pennsylvania judiciary, the case could not serve as "notice" to Pennsylvania judges as the District Attorney improperly posits in his brief.  (Comm. Br. at 60.)

8

unconsitutional.  The Superior Court's decision to the contrary is inconsistent with clearly established federal law, involves an objectively unreasonable application of federal law and is based on determinations of fact that are patently unreasonable.  For these reasons, Orie Melvin's convictions on Counts 1, 2, 4 and 5 should be vacated.

**B.     Orie Melvin Was Denied Access to Electronic Evidence in Violation of the Fifth and Sixth Amendments and the Evidence Was Not Searched for Exculpatory Material Contrary to Brady.**

The prosecution has a non-delegable duty to identify and disclose potentially exculpatory information.  Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  The District Attorney breached this obligation in failing to look for exculpatory material in the extensive electronic evidence that it seized pursuant to a warrant from Orie Melvin's sister's legislative office.  Further, Orie Melvin was deprived of the basic right to examine electronic evidence in the possession of the Superior Court which was searched at the District Attorney's request.  Davis v. Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974).  The Superior Court's decision to the contrary is inconsistent with clearly established federal law and represents an objectively unreasonable application of that clearly established law and, as a result, Orie

9

Melvin is entitled to habeas relief.

The District Attorney concedes that the legislative computers were never inspected for <u>Brady</u> material but rather argues that he was excused from complying with <u>Brady</u> since the computers were subject to a claim of legislative privilege and could only be searched with the assistance of a special master. (Commw. Br. at 80, 82, 84.)  This is a distinction without a difference.  The Supreme Court has made clear that a prosecutor has a non-delegable "duty to learn of any favorable evidence known to others acting on the government's behalf in the case."  <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995).  Thus, appointment of a special master does not and cannot relieve the District Attorney of his constitutional duty to search for and produce potentially exculpatory evidence.  It is likewise immaterial that the District Attorney claims that only the special master had access to the "entire contents" of the seized electronic evidence.  (Commw. Br. at 86.)[5]  Under <u>Kyles,</u> the District Attorney was constitutionally obligated to identify exculpatory material contained in the seized evidence notwithstanding involvement of the special master and,

---

[5]  The District Attorney possessed the original evidence from the time of seizure through the appointment of the special master and thereafter continued to retain the evidence through the trial.  (R. 1302a.)

indeed, the District Attorney could have and should have utilized the services of the special master for this purpose.  Nor is it relevant that partial[6] copies of the evidence in the District Attorney's possession were also in the possession of a third party.  (Id. at 82.)  It is well settled that a prosecutor cannot avoid the duty to identify exculpatory information by claiming that the accused could have discovered the information on his own.  Banks v. Dretke, 540 U.S. 667, 668, 124 S. Ct. 1256, 1275, 157 L. Ed. 2d 1166 (2004).  In any event, the assertion of privilege by the legislative caucus rendered the computer equipment unavailable to Orie Melvin, but available to the District Attorney through the special master.[7]

The Superior Court's determination that the District Attorney was not obligated to look for and produce exculpatory information in electronic evidence that he seized is directly contrary to Kyles and therefore objectively unreasonable. Further, there is no doubt that the failure to look for exculpatory evidence in the

---

[6] The Republican Caucus did not receive complete forensic copies of the seized material as asserted by the District Attorney on page 82 of his brief.  (R. 1292a.)

[7] The District Attorney's brief is somewhat confused concerning the issue of waiver of the privilege.  (Commw. Br. at 85.)  The Republican Caucus did not agree to waive privilege, but did agree to allow Orie Melvin's expert to review the metadata for the files on the legislative computers (i.e. no content) in order to assess when files were created, stored and transferred.  (R. 2129-33a.)  The trial court rejected this approach notwithstanding the Republican Caucus's agreement and refused to allow Orie Melvin's expert to access the seized electronic evidence. This was also a violation of the Fifth and Sixth Amendments.

11

seized computer equipment deprived Orie Melvin of a fair trial.  The charges against Orie Melvin were premised on alleged misuse of government computers. The District Attorney identified specific terms which the special master used to search the seized computers for the purpose of identifying evidence of alleged misuse of the computers, but made no effort to look for exculpatory material.[8] Orie Melvin was denied the corresponding opportunity to examine the equipment for exculpatory information which resided on those computers, including proof that legislative staffers performed substantial <u>legislative</u> work on legislative time. Since such evidence refutes the percentages offered by the District Attorney as estimates of the time allegedly spent by legislative staffers performing political tasks, this undisclosed favorable evidence would reasonably have put the whole case in a different light and therefore the failure to search for and produce this exculpatory evidence significantly undermines confidence in the jury's verdict.

The Superior Court also unreasonably misapplied federal law in affirming the decision to deny Orie Melvin the opportunity to examine judicial computer equipment which was searched at the request of the District Attorney.

---

[8] With respect to the legislative computer equipment, the District Attorney argues in his brief that Orie Melvin "received all information found not to involve privilege."  (Commw. Br. at 86.)  This is not accurate.  Orie Melvin received only those materials that included the District Attorney's search terms and that were not determined to include privileged material.  (R. 8316a.)

12

Denying equal access to the evidence is a violation of the Fifth and Sixth Amendments. Davis, 415 U.S. at 315, 94 S. Ct. at 1110. With respect to the judicial computers, the District Attorney asserts that there was no error since he never possessed the equipment. (Commw. Br. at 86.) This argument is based on a mistaken recollection of the record. Orie Melvin sought to compel the Administrative Office of Pennsylvania Courts to permit her expert to examine the computers used by employees in her chambers — the same computer equipment that was searched at the District Attorney's request — but the request was ultimately denied by the trial court. (R. 1117a, 1276a, 1332 a.) Orie Melvin's right to inspect the original evidence derives from the Fifth and Sixth Amendments, not Brady, and therefore the fact that the evidence was not in the possession of the District Attorney is not dispositive or even relevant. The Superior Court failed to recognize or appreciate Orie Melvin's constitutional right to inspect the original evidence and, as a result, its adjudication on this issue was objectively unreasonable.

Thus, the Superior Court's decision with respect to the electronic evidence was both contrary to and an unreasonable application of federal law. The convictions on all counts should therefore be vacated under § 2254(d) and the case

13

remanded with specific direction to the prosecutor to fulfill his obligation under

Brady.  Further, Orie Melvin should be permitted to examine all electronic

evidence seized and/or searched by the District Attorney.

###### C.    The District Attorney's Seizure of Emails From Orie Melvin's Personal Email Account and Use of Those Emails at Trial and to Prepare the Case for Trial Violated the Fourth Amendment.

The Superior Court properly concluded that the seizure of Orie

Melvin's entire email box pursuant to an unconstitutionally overbroad warrant

violated the Fourth Amendment.  Melvin, 103 A.3d at 19.  Its finding that the

admission of improperly seized emails was harmless, however, is objectively

unreasonable and contrary to clearly established federal law which dictates that

indirect as well as direct products of such constitutional violations are required to

be suppressed, Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 416,

9 L. Ed. 2d 441 (1963), and which requires an evidentiary hearing where the

prosecution bears the burden of proving beyond a reasonable doubt that the

unlawfully seized evidence did not contribute to the proof admitted at trial,

Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 839, 17 L. Ed. 2d 705

(1967); Nardone v. United States, 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 L. Ed.

307 (1939).

The structural defects that led to the Superior Court's flawed decision are staggering.  First, Orie Melvin was denied a suppression hearing in connection with her timely pre-trial motion for suppression of the contents of her email box. (R. 1353-55a, 1732-33a.)  The trial court denied the motion without a hearing or substantive argument based on the erroneous finding that Orie Melvin's challenge to the seizure of her emails had already been raised and decided by another judge years before in connection with the separate motion filed by Orie Melvin's sister, Jane Orie, in her separate case and concerning her own emails.  (R. 1732-33a.) When Orie Melvin raised the issue in her Rule 1925(b) Statement of Errors Complained of on Appeal, (R. 7832a), the trial court judge incorrectly stated in his written opinion that no suppression motion had been filed and that the issue had been addressed by yet another judge in connection with Jane Orie's case.  The trial judge then adopted that analysis.  The treatment of this issue spanned a total of three sentences.  (R. 7843a.)  When Orie Melvin's case was argued before the Superior Court, the panel asked Orie Melvin's counsel whether any of the illegally seized materials had been introduced as exhibits at trial.[9]  Counsel responded with a "partial list" of the seized emails.  (Exhibit D to Orie Melvin's Supp. Br.)

---

[9]  The request was in apparent response to the District Attorney's inaccurate representation during oral argument that none of the illegally seized emails had been used at trial.

Although the Superior Court acknowledged receipt of the "partial list" in the Order accepting the submission, (Exhibit E to Orie Melvin's Supp. Br.), its determination of harmless error is premised on the patently erroneous premise that the 10 emails in the "partial list" comprised the <u>entirety</u> of the emails that were illegally seized. Orie Melvin, 103 A.3d at 20. Even the District Attorney concedes that the submission from counsel for Orie Melvin comprised only "a partial list." (Commw. Br. at 23.) It is obvious from the record that the District Attorney introduced many other seized emails as trial exhibits (see Pet.'s Supp. Br. at 56) and, since the emails were seized at the start of the investigation in January 2010, the District Attorney utilized the improperly seized emails to prepare and develop his case against Orie Melvin from the date of the unconstitutional seizure through Orie Melvin's trial in January 2013. There was never a hearing to determine the extent of the direct and indirect use of the improperly seized emails.

The record is thus clear that Orie Melvin was not afforded an opportunity to challenge the evidentiary use of the illegally seized evidence at either the trial court or appellate level. The District Attorney argues that Orie Melvin had a "full opportunity" to litigate the issue, (Commw. Br. at 96), but tellingly fails to point to any support in the record for such an assertion. Instead,

16

the District Attorney attempts to draw an analogy between this case and <u>Marshall v. Hendricks</u>, 307 F.3d 36 (3d Cir. 2002), where the accused was determined to have received a full and fair opportunity to litigate his Fourth Amendment argument. But there is no comparison. The accused in <u>Marshall</u> was afforded a full pretrial suppression hearing, but Orie Melvin had no such opportunity to litigate her Fourth Amendment challenge pre-trial. Nor was she afforded an evidentiary hearing after the Superior Court decision to establish the District Attorney's use of the illegally seized emails to prepare and develop his case over the three-year period between the seizure of the emails and the trial. The structural defects are obvious and undeniable and therefore the Superior Court's objectively unreasonable application of federal law is reviewable notwithstanding <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067 (1976). (<u>See</u> cases cited in Orie Melvin's Supp. Br. at 59.)

Put simply, this case presents an unconscionable breakdown in the process intended to address and remedy Fourth Amendment violations. The Superior Court correctly concluded that a violation occurred, but its decision that the violation was harmless is contrary to clearly established federal law and is therefore subject to review and correction by this Court. Accordingly, Orie

Melvin's conviction should be vacated under § 2254 and the case remanded to the state court with direction to conduct an evidentiary hearing for the purpose of identifying all evidence derived from the illegally seized emails.

> ### D.   The State Court Adjudication of the Prosecutorial Misconduct Issue Is Based on an Unreasonable Determination of the Facts and Is Contrary to Federal Law.

A prosecutor's knowing use of false evidence violates the Fourteenth Amendment. Miller v. Pate, 386 U.S. 1, 7, 87 S. Ct. 785, 788, 17 L. Ed. 2d 690 (1967). The conviction in this case was obtained following a pattern of introduction of false evidence and therefore is required to be reversed.

The District Attorney initially contends that Orie Melvin is not entitled to habeas relief on this issue since she "only raised state law and state constitutional violations" in the state court proceedings and therefore failed to exhaust her state law remedies. (Commw. Br. at 39.) This argument is without merit. To "fairly present" a claim for purposes of § 2254, the petitioner must present the claim in a manner that puts the state court on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). Importantly, the Third Circuit has held that a habeas petitioner "need not have

cited 'book and verse' of the federal constitution" in order to fairly present a

federal claim at the state level for purposes of exhaustion.  Id.; see also Briston v.

Wholey, 307 Fed. App'x. 616, 618 (3d Cir. 2009).  Rather, a petitioner may

present a claim in state court through any of the following mechanisms:

> (a) reliance on pertinent federal cases employing
> constitutional analysis, (b) reliance on state cases
> employing constitutional analysis in like fact situations,
> (c) assertion of the claim in terms so particular as to call
> to mind a specific right protected by the Constitution. . . .

Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992) (quoting

Daye v. Attorney General of New York, 696 F.2d 186 (2d Cir. 1982)).  Orie

Melvin fairly presented her claim of prosecutorial misconduct in state court

through each of the methods.  First, she cited Berger v. United States, 295 U.S. 78,

55 S. Ct. 629, 79 L. Ed. 1314 (1935), the most authoritative United States

Supreme Court precedent on the role of a prosecutor in administering justice.  (See

Orie Melvin's Br. for Appellant at 45-46.)  Second, she relied on, inter alia,

Commonwealth v. Martorano, 559 Pa. 533, 539, 741 A.2d 1221, 1223 (1999),

which employed a constitutional analysis in similar factual circumstances, i.e. "a

fair trial is not simply a lofty goal, it is a constitutional mandate."  (R. 7678a; see

also Br. for Appellant at 54-56.)   Finally, Orie Melvin argued her claim in

19

particular terms which invoke the due process rights protected by the United States Constitution.  Specifically, she asserted:  "The knowing introduction of false evidence and subornation of perjury intentionally subverted the judicial process and deprived Orie Melvin of a fair trial."  (See Br. for Appellee at 54; id. at 56; see also R. 7677-79a.)  Thus, Orie Melvin fairly presented her federal prosecutorial misconduct claim to the state court.

The District Attorney also errs in attempting to explain away the prosecutor's knowing introduction of false evidence as unintentional errors in a complex case.  (Commw. Br. at 101.)  This is an unreasonable conclusion in light of the prosecutor's actual pattern of misconduct.  Far from demonstrating inadvertent mistakes, the pattern of misconduct in this case instead establishes improper intent to mislead the jury.  Moreover, the Superior Court's determination is contrary to established federal law and objectively unreasonable because it was based on only one of the proven instances of flagrant misconduct — the improper characterization of the "Women in the Profession" materials as political questionnaires — and failed to consider the prosecutor's other intentional misconduct — inserting documents that were created in 2010 into the red accordion file that was allegedly removed from the legislative office in 2009 and misrepresenting that the October 21, 2009 express mail delivery was for political

20

purposes.  Ignoring two out of three instances of egregious misconduct constitutes an unreasonable determination of the facts in light of the evidence presented.  The Superior Court's failure to consider two out of three instances of prosecutorial misconduct was likewise contrary to clearly established federal law, which requires courts to examine the prosecutor's offensive actions in the context of the entire trial.  <u>Donnelly</u>, 416 U.S. at 643, 94 S. Ct. at 1871.  The District Attorney's argument completely ignores this crucial deficiency in the Superior Court's analysis.

In sum, the Superior Court's adjudication of the prosecutorial misconduct issue was based on an unreasonable determination of the facts in light of the evidence presented and was contrary to established federal law.  Orie Melvin is therefore entitled to a new trial.

**E.    The Letters of Apology Required as a Condition of Sentence Violate the Fifth Amendment.**

The District Attorney argues that the "Petitioner's in-court apology" for which "she can always be questioned" resulted in waiver of the Fifth Amendment protection.  (Commw. Br. at 107.)  Orie Melvin was sentenced twice: on May 7, 2013 and again on May 14, 2013.  A second and different sentence was

handed down by the trial court at the second sentencing, and the trial court

colloquied Ms. Melvin on her right to allocute to which she declined.

It was at the second sentencing at which the Petitioner made no

statement:

| | |
|---|---|
| MR. CLAUS: | The right of allocution, Your Honor, of the defendant.  This is a re-sentencing. |
| THE COURT: | All right.  Okay. |
| MR. CLAUS: | Thank you. |
| THE COURT: | I'm not finished.  Mr. Casey |
| MR. CASEY: | Yes.  We would incorporate, Your Honor, the previous sentencing allocution and I would be glad to advise her of her rights once again. |
| THE COURT: | I can advise her.  Ms. Melvin, you have the right to allocution.  It's an absolute right to allocution.  You have already exercised that right, but if you wish to exercise the right again, you may do so. |
| DEFENDANT ORIE MELVIN: | No. |
| THE COURT: | All right.  Mr. Casey. |

(R. 7795.)

It was at the second sentencing at which counsel for Orie Melvin

objected to the condition of the coerced confession on Fifth Amendment grounds:

> MR. CASEY:      Judge, as to the -- I would ask the
>                 Court's consideration with the issue
>                 of the apologies letter, and ask -- the
>                 consideration I ask the Court is to
>                 either consider rescinding that
>                 requirement or staying it because of
>                 the Fifth Amendment to the United
>                 States Constitution, right not to
>                 incriminate oneself.

The trial court confirmed that Ms. Orie Melvin was being coerced by the trial

court to make the admission:

> THE COURT:      I understand that, Mr. Casey, but
>                 what I'm doing here is I'm ordering
>                 her to do something.  She is not doing
>                 it voluntarily.
>
> MR. CASEY:      Yes. And Judge, the coercion to write
>                 the letter is what invokes the Fifth
>                 Amendment, and that letter would be
>                 incriminating, and she is yet not even
>                 on direct appeal and the Fifth
>                 Amendment would stay with her until
>                 the conclusion of final judgment.

(R. 7795-96a.)

23

Thus, the District Attorney's argument fails.  Orie Melvin did not testify in the second sentencing on May 14, 2013.  Moreover, it was in the second sentencing that she asserted her Fifth Amendment right not to incriminate herself in opposition to the compelled apology letters.

Further, there is no dispute that the coerced admission in the form of the apology letter was not an inquiry of a witness.  It was an involuntary and coerced statement universally rejected in American jurisprudence.  The Supreme Court spoke definitively on this issue as follows:

> The Fifth Amendment, made applicable to the states
> through the Fourteenth Amendment, commands that
> "[n]o person . . . shall be compelled in any criminal case
> to be a witness against himself."  The essence of this
> basic constitutional principle is "the requirement that the
> State which proposes to convict *and punish* an individual
> produce the evidence against him by the independent
> labor of its officers, not by the simple, cruel expedient of
> forcing it from his own lips."  Culombe v. Connecticut,
> 367 U.S. 568, 581-582, 81 S. Ct. 1860, 1867, 6 L .Ed. 2d
> 1037 (1961) (opinion announcing the judgment)
> (emphasis added).  See also Murphy v. Waterfront
> Comm'n, 378 U.S. 52, 55, 84 S. Ct. 1594, 1596-1597, 12
> L. Ed. 2d 678 (1964); E. Griswold, The Fifth
> Amendment Today 7 (1955).

Estelle v. Smith, 451 U.S. 454, 462, 101 S. Ct. 1866, 1872, 68 L. Ed. 2d 359 (1981) The Supreme Court has historically rejected coerced confessions.  Arizona

v. Fulminante, 499 U.S. 279, 288, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991);

Mincey v. Arizona, 437 U.S. 385, 399-401, 98 S. Ct. 2408, 2417-2418, 57 L. Ed.

2d 290 (1978); see also Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002).

      The District Attorney asserts that Orie Melvin has not demonstrated

that the state appellate court applied the law in an objectively unreasonable

manner.  (Commw. Br. at 109-110 (citing Bell v. Cone, 535 U.S. 685, 699, 122 S.

Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002).)  A comparison of the Superior Court's

opinion staying the apology condition, Commonwealth v. Orie Melvin, 79 A.3d

1195 (Pa. Super. 2013), with the Superior Court's opinion affirming the

conviction, Melvin, 103 A.3d 1, demonstrates clearly the objectively unreasonable

manner of the Superior Court's decision on the apology letter issue.  In the opinion

granting the stay, the Superior Court recognized Mitchell v. United States, 526

U.S. 314, 321, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999), which was cited as

controlling authority at the time of the second sentencing.  (R. 7798-7799a.)  The

Superior Court said:

> [T]he Commonwealth argues that Orie Melvin has
> waived her privilege against self-incrimination, citing
> Mitchell v. United States, 526 U.S. 314, 321, 119 S. Ct.
> 1307, 143 L. Ed. 2d 424 (1999).
>
> In our view, Orie Melvin's brief statement to her children
> was not incriminating, and thus cannot serve as a basis

> for finding a waiver of the privilege here.  Read in
> context, her remarks constitute nothing more than an
> acknowledgement of her regret that her children have
> suffered as a result of her legal troubles.  Importantly,
> Orie Melvin did not admit her guilt for any of the crimes
> with which she was charged and convicted.  Later in the
> same sentencing hearing, the trial court remarked that
> Orie Melvin has "consistently refused to accept any
> responsibility for any of the harm you have done to the
> people who worked with you, the electoral process, to
> your colleagues in the Judiciary, and most of all to your
> family."

Orie Melvin, 79 A.3d at 1203-04.  The stay opinion further recognized that "[t]he

privilege against self-incrimination is accorded liberal construction in favor of the

right it was intended to secure, and may be claimed when a witness has reasonable

cause to apprehend danger from a direct answer."  Id. at 1201 (citation and internal

quotation marks omitted).

This is to be contrasted with the Superior Court's decision affirming

the conviction in which the panel does not comment upon the unconstitutionality

of the trial court's coerced apology from Orie Melvin at sentencing, but simply

remarks:

> We are aware of no federal or Pennsylvania state law,
> and Orie Melvin has not cited to any, that supports the
> notion that the right against self-incrimination extends
> beyond the pendency of a direct appeal.  As a result, we

26

> must conclude that Orie Melvin is not entitled to relief
> from the apology letters requirement on constitutional
> grounds after her direct appeal has been decided.

Melvin, 103 A.3d at 51.  The authority in support of a finding of a constitutional

violation was expressly provided in Orie Melvin's brief[1] and identified in the

Superior Court's stay opinion.  Therefore, the Superior Court's misapplication of

law is not only clear, it is objectively unreasonable.

---

[1] Orie Melvin cites the following federal authority in her Brief for Appellant on direct
appeal:  Hoffman v. United States, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951); Estelle v.
Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 259 (1981); and Chavez v. Martinez, 538
U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003).

## CONCLUSION

For the reasons stated above, Orie Melvin's conviction should be vacated under § 2254.

Respectfully submitted,

/s/ Patrick A. Casey
Patrick A. Casey
PA ID No. 50626
pcasey@mbklaw.com
Donna A. Walsh (*pro hac vice*)
PA ID No. 74833
Suzanne P. Conaboy (*pro hac vice*)
PA ID No. 314036
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: January 15, 2016

## CERTIFICATE OF SERVICE

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Reply Brief in Further Support of Petition for Writ of Habeas Corpus was served upon the following counsel of record via the Court's ECF filing system on this 15th day of January, 2016:

Ronald M. Wabby, Jr.
Assistant District Attorney
Allegheny County District Attorney's Office
401 Allegheny County Courthouse
Pittsburgh, PA 15219-2489

/s/ Patrick A. Casey
Patrick A. Casey